Parsons, C. J.
[After stating the action and its history from the report of the judge who sat in the trial.] As to the alteration, it is an old rule, that any alteration, whether material or not, in an instru rnent, made by the party to whom it is given, shall avoid it, unless *430 made by the consent of the party who executed it. But this consent may as well be implied from the nature of the alteration, as be expressed. There are several cases to this point. Markham vs. Goraston, (Moor. 547,) where blanks were filled up by consent after execution, and the deed was held good. In Paget vs. Paget, (2 Ch. Rep. 187,) blanks in a deed of revocation were filled up, and the deed held good, and no notice is taken of any assent. To these may be added the case of Zouch vs. Clay, (1 Vent. 185,) where a blank was left for the name of a third obligor, two having executed the deed, and the blank was afterwards filled with the name of C., who executed it, and it was holden that the first obligors remained bound. Agreeably to this case, it is the practice, in the case of custom-house bonds, to have a blank, for the duties when ascertained, at the time they are executed; and the blanks are afterwards filled with the amount of the duties, without prejudice to the bond, the obligors being considered as consenting that the blanks shall thus be filled up. (1), (2)
These are all cases on deeds, arising on the plea of non est factum. But in a simple contract, which is merely evidence [ * 522 J of a promise, an immaterial alteration, however * made, not at all affecting the terms of the promise, seems not to be within the same principle of deeds, which, from the alteration, may not be the deeds of the parties; while a similar alteration in a written simple contract might leave it complete evidence of the same contract.
However this may be, what is an alteration, whether in matter or form, remains a question. And there is no case, even in a deed, which determines that every alteration made by the obligee, whether in completing a letter, or correcting the spelling of a word, would be fatal to the deed. And in a simple contract, an addition by the unnecessary supplying a word, which the law would supply, is not an alteration, either in matter or form, which would destroy the contract. Such addition has no effect in form or substance. In my opinion, it would be unworthy of the wisdom of the law to decide, that an incautious interlineation of a word, which the same law would necessarily imply, should defeat the contract. Indeed, the assent of the party signing such contract, that the omission of a word by a clerical mistake, which the law will supply, might be *431 cured by inserting such word, ought to be presumed, to protect him from the imputation of intentional fraud.
In applying these equitable principles to the case before us, we find in the note the time of payment expressed to be the twenty-fifth day of December, in the — of our Lord 1805, omitting the word year; and this word has been since supplied. Now, the law would have supplied this word, and without the insertion of it the note would have supported a count on a promise to pay on the twenty-fifth day of December, in the year of our Lord 1805. We are, therefore, of opinion that the actual insertion of the word year, which the law would clearly have supplied, is no such alteration as will annul the contract, if it was interlined by the promisee without consent; and if it were an immaterial alteration, the law will reasonably presume an assent of the promisors to the making of it. — If this opinion is correct, the verdict is right, notwithstanding this * alteration, let it have been made [ * 523 ] either by Chaplin or by Bennett, the promisee.
The other objection to the verdict is, that the defendant was answerable only upon the inability of Chaplin, which was not proved.
The note appears to have had the signatures of Chaplin and of the defendant, before it was delivered to Bennett. The defendant, therefore, is not the guarantor of the performance by Chaplin of a subsisting promise of his to Bennett; but he is an original promisor with Chaplin. By this promise Chaplin and the defendant are both originally liable; and although the one engages as principal, and the other as surety, yet they are each answerable to the promisee ; and the insertion of the characters in which they promise is for the defendant’s sake, to give him his remedy against Chaplin.
The construction of this note, upon the face of it, is the same as if the note had expressed a joint and several promise, by Chaplin as principal, and the defendant as surety, to pay the money; or if, without expressing in the body of the note the characters in which the parties promised, against the signature of Chaplin was subjoined “ as principal,” and against that of the defendant was added “ as surety.” (Vide Peake’s N. P. 130, Marsh vs. Ward.) Notes of this kind are to have a similar construction with bonds, in which the obligors are named as principal and sureties, although they are bound jointly and severally.
Upon the construction of this note, upon the face of it, we are satisfied that the defendant is answerable as an original promisor, and not merely on the contingency of Chaplin’s failing to pay.
However, to rebut this construction, it was in evidence that, when the note was delivered to Bennett, he and Chaplin consid *432 ered the defendant as holden for the payment, on the condition that Chaplin could not pay.
It would require some consideration, before evidence of this kind was admitted, to control the legal effect of the'' [* 524 ] * writing. This evidence does not prove that the wno.e agreement was not reduced to writing, or that any fact existed to create a latent ambiguity, but is applied merely to give a construction to the note as it is written. We are, however, satisfied, that in a written simple contract, not within the statute of frauds, where the whole contract is reduced to writing, and in which there appears no latent ambiguity, paroi evidence cannot be admitted to explain such contract; the language used by the parties therein being the best evidence of their intent.
But it is unnecessary to decide on the legal admissibility of this evidence ; for it is shown by the plaintiff that Bennett had recovered a judgment on this note against Chaplin, and that the execution sued on it was returned unsatisfied. This is, prima facie,sufficient evidence to charge the surety ; and he must be concluded by it, unless he can show fraud or collusion in the transaction.
We are, therefore, satisfied, upon the whole, that the jury have rightly decided the cause; and as the evidence was left to them oy the judge, wre do not see any repugnance between his direction and the verdict.

Judgment on the verdict

 See also the case of Smith vs. Crooker & Al., ante, vol. v. 538.

 [Upon what principle can an instrument thus signed and sealed, by any one, while it is imperfect, be treated after the blank shall be filled by another in his absence, without a letter of attorney or power under seal, as the deed of him who thus signed and sealed it? See Smith vs. Crooker, 5 Mass. 540, note (a), and the cases there cited. It is said that it is the practice at the custom-house. But can the practice of ignorant officers of the customs establish a rule of law? — Ed.]