## HALE v. RUSS.

Where the principal in a bail-bond, after it was signed by the surety, and in his absence, but before delivery, erased the name of the Sheriff as obligee, and inserted that of the constable who served the precept, and this in the presence and at the suggestion of the constable; it was holden that this did not avoid the bond as to the surety.

Such an alteration, in a bail bond, seems to be immaterial.

The consent of the surety in such case may well be presumed, his intention of becoming bail not being affected, and the alteration being only in matter of form.

*Scire facias* against the defendant as bail for one *Wilson.* Plea that the defendant never became bail for said *Wilson ;* and issue thereon.

The plaintiff produced the bail bond, bearing the names of the defendant and of *Wilson* as obligors, and that of *Robert Smith, junior* as subscribing witness ; and proved by two witnesses, well acquainted with that vicinity, that they never knew such a person as *Smith* in the town where the bond was said to be taken, nor in that part of the country, and that no such person could be found after strict and diligent inquiry. The Judge who presided in the trial of the cause thereupon permitted the plaintiff to prove the hand-writing of *Wilson* and *Russ*, which being done, the bond was read to the jury.

The defendant then offered *Wilson* as a witness, to prove an alteration in the bond after its execution; and the Judge overruling the plaintiff's objection to his admission, he testified, that *David Brooks*, to whom the original writ of the plaintiff against him was delivered for service, called on him to procure bail in the action ;—that he named *Russ* as his surety, whom *Brooks* agreed to accept; and directed him to procure a bond duly executed by himself and *Russ*, and bring it to *Brooks*, which he afterwards did ;—that when *Brooks* saw the bond, he observed that it contained the name of the *Sheriff* as obligee, whereas *he* was not *then* a deputy of the Sheriff, though he recently had been, but was a constable of *Lincolnville ;* and at his suggestion *Wilson*, in his presence, erased the name and office of the Sheriff, and inserted that of " *David Brooks, Constable of Lincolnville,*" and delivered the bond to *Brooks* as the bail bond in the action.

*Russ* had no knowledge of this alteration till long after it was made; and it did not appear that he ever expressly assented to it.

The Judge, intending to reserve the questions of law, arising from these facts, for the consideration of the whole Court, directed a verdict for the plaintiff,·which was accordingly returned; and which the defendant now moved the Court to set aside.

*White*, for the defendant, contended that the action could not be supported, not being between the contracting parties nor their privies in interest. The bond was between *Russ* and *Watson*; the action is between *Russ* and *Brooks*; the obligee was Sheriff of the county, the plaintiff is constable of a town. The alteration is not only material, but it was made without the defendant's consent or knowledge. *N. Hamp. Rep.* 95. 145. 1 *Esp. Rep.* 81. 5 *D. & E.* 325. 11 *Mass.* 309. 10 *East* 431.

*Abbot*, for the plaintiff. The obligor *Wilson*, being the person who made the alteration complained of ought not to have been admitted as a witness; it being against good policy to permit a party thus to impeach his own security. *Walton v. Shelly*, 1 *D. & E.* 300.

But a bail bond is a record, and cannot be denied nor varied by parol. It lays the foundation for a writ of *scire facias* against the bail. *Champion v. Noyes,* 2 *Mass.* 481. It is a part of the officer's return, and may not be contradicted. If false, the remedy is against the officer for a false return.

The alteration, however, is not material. It was evidently the intention of the defendant to become the bail of *Wilson*, and this intention is all which has been carried into effect. It may well be presumed that he consented that *Wilson* should make any alteration necessary for this purpose. The penal sum, and the conditions remain as at first; and the defendant is still bound to the officer who served the process, agreeably to his original intent. Neither was the alteration made by the obligee, or a stranger; but by one of the obligors, who therefore ought not to complain. 11 *Co.* 27. 5 *Mass.* 539. Nor was it made after delivery, but before; and therefore good, upon the authority of *Shep. Touchst.* 67.

*White.* Of the material parts of a deed, all the books agree that *parties* is one; and here was a change of *parties*, and there-

fore a material alteration. Nor was it made by the obligor. As to *Russ*, the bond was perfect when he executed it, and it was delivered as soon as it passed from his hands.

MELLEN C. J. afterwards delivered the opinion of the Court as follows:

Two objections have been made to the verdict as grounds for the motion for a new trial.—1. That *secondary* evidence was improperly admitted to prove the execution of the bail bond.—2. That the jury were erroneously instructed that the alteration in the bond was of such a nature, and made under such circumstances as would not in law avoid it.

As to the *first* point, we cannot doubt the correctness of the decision admitting secondary evidence. The law requires that the subscribing witness shall be produced, if living, and within the reach of the process of the Court. But when due diligence has been used to find him, and without success, then the next best proof is admissible. In the case before us, it is stated that after inquiry made in the town where the bond was executed, it was found that no such person as the subscribing witness had ever lived there or in any of the neighboring towns; and nothing could be ascertained respecting him. After these facts were established, proof of the hand-writing of the defendant and of the subscribing witness was properly offered to the jury. *Cunliffe v. Sefton,* 2 *East* 183.

The *second* point deserves a more particular consideration. In *England, bail below* is given by bond to the Sheriff; *bail above* is given to the plaintiff by recognizance in Court, or before commissioners. The bail bond may by law be assigned to the plaintiff; and he may have an action of debt upon it in his own name, and may bring a *scire facias* upon the recognizance. By the laws of this State the bail given is made to answer the purpose both of bail below, and bail above, at common law. It is always taken by bond given to the officer; and such bond is not assignable, nor can an action of debt be maintained upon it by the plaintiff in his own name or the name of the Sheriff. With us, the plaintiff avails himself of such bond by a writ of *scire facias* in his own name, in the same manner as he does in *England* by the same kind of process on the recognizance; and

instead of the plea of *non est factum*, which would be proper in debt on a specialty, the bail may contest the execution or validity of the bail-bond on the plea that he did not become bail for the principal, as alleged in the *scire facias*. In fact this action proceeds on the principle that the officer to whom the bail-bond is given is the mere trustee of the plaintiff, and receives the security for his use. In the examination of this point of the cause, this distinction seems to be of some importance.

It is manifest that the alteration was made without any fraudulent intent or improper motive; by the consent and in the presence of *Brooks* the constable, and *Wilson* the principal in the bond; and for the express purpose of rendering the bond legal and sufficient. It is true that *Russ* was not privy to the alteration. The bond clearly is not avoided as to *Wilson;* the only question is, whether it is void as to *Russ* the defendant.

It does not seem to be necessary in this case to decide whether the alteration was an *immaterial* one, (though we are inclined to consider it as such,) nor whether it would avoid the bond, being made with the consent of the *obligee.* This latter question appears not yet settled either in this State, or in *Massachusetts.* In the case of *Barrett v. Thorndike* decided in *Lincoln* county *September* term 1820, (*ante* p. 73) we had occasion to review some of the principles relating to alterations and erasures in deeds, bonds, and other instruments, whether material or immaterial; but that case was determined upon other grounds. Nor is it necessary to determine how far the consent or act of the constable in making the alteration in the bond should be *imputed to the plaintiff,* even if the law were clear that an immaterial alteration, made by an obligee, would avoid a bond; inasmuch as the constable was a mere trustee, appointed by the law to receive a bond for the plaintiff's use, and over whose acts the plaintiff had no control. Waiving all these questions, we decide this cause upon other principles.

It is important to consider *at what time* the alteration was made. The bond was prepared and signed by *Wilson* at the request of *Brooks;* and then signed by *Russ,* who gave it back to *Wilson* to carry and deliver to *Brooks* as a good and sufficient bail-bond in the action. *Before* it was delivered to *Brooks,* he discovered the error in the *form* of the bond; and at his sug-

gestion and request *Wilson* made the alteration, and thereupon the bond, so corrected, was *delivered* to *Brooks*. The circumstances also, under which the alteration was made, deserve particular notice. In all cases relating to this subject it seems to be admitted that alterations, made by *consent of parties*, do not avoid the instrument. If therefore it should appear from the facts reported, that the bond was made payable to *Brooks* instead of the Sheriff by the *express* or *implied* consent of *Russ*, he must be bound by it. It is evident that he intended, when he signed the bond, to become the bail of *Wilson*, and to assume all the liabilities of bail. It does not appear that he ever knew who was the obligee named in the bond, and to him it was a matter of no consequence. His object was to assist his friend, and to obtain the continuance of his personal liberty. With this view all the arrangements had been made, and the bond was procured and signed. *Wilson* was the agent of *Russ* to carry and deliver the bond to *Brooks* the constable. *Brooks* told *Wilson* the agent that the bond was incorrect in form, and, unless corrected, could not avail as an effectual instrument. To render it correct and effectual this agent made the alteration, and then delivered the bond, which produced its intended effect to release *Wilson* from the arrest when made.

From this agency and confidence reposed, we may well presume the consent of *Russ* that any errors in the form of the bond, the correction of which would be consistent with his intentions and necessary to give them effect, might be corrected. We are of opinion that such consent ought to be inferred from the facts, to prevent the imputation upon the defendant of a fraudulent intent to the injury of the plaintiff. We also think ourselves fully justified in drawing this conclusion, from the reasoning of the Court in the case of *Smith v. Crocker*, 5 *Mass.* 538. and *Hunt v. Adams*, 6 *Mass.* 519. and the principles established by the decisions of those causes. In the case at bar the only alteration made in the bond was the honest substitution of *one nominal* obligee for *another ;* the *real* obligee, that is *Hale* the creditor, being the same, for whose use the bond was taken, to whom alone it was intended as a legal security, and by whom it has been accepted as such, as appears by his prosecution of this suit. On the whole, we are satisfied that a new trial ought not to be granted.                          *Judgment on the verdict.*