COBB & AL. *v.* LITTLE.

Where the promissee in a negotiable note, payable in six months, sold it, having made and signed this indorsement on it—" I guaranty the payment of the within note in six months"—this was holden to be an absolute and original undertaking, by which it was the duty of the *guarantor* to see that the maker paid the money within the time specified,—or to take notice of his neglect and pay it himself.

If an action against the maker of a note be brought in the name of *one only* of two joint indorsees, and judgment be had therein; they are not thereby estopped to maintain a *joint* action against the indorser, as guarantor of the same note.

This was an action of *assumpsit* on a promissory note, made by one *Thomas Crague, April* 30, 1817, payable to the defendant or his order in six months; on the back of which was written as follows ;—" I guaranty the payment of the within note " in six months. *Thomas Little.* *June* 3, 1817." to which were added by *Mr. Kinsman,* one of the plaintiffs, these words—" to *Matthew Cobb* and *Nathan Kinsman.*"

The plaintiffs, at the trial in the Court below, after producing the note, called a witness, who testified that on the third day of *June* 1817, he was present when the defendant contracted with *Mr. Kinsman* for the purchase of certain real estate in *Windham,* which the witness had previously mortgaged to *Kinsman* and *Cobb ;*—that the note in question, with another against *Crague* of the same date and tenor, but payable in three months, were among others delivered by *Little* to *Kinsman* in part payment for the real estate ;—that he saw the defendant

sign the guaranty on the back of the notes against *Crague,* and
heard him say they were good, and that he would guaranty the
payment of them at all events;—that the witness then execut-
ed a deed of the land to the defendant at *Cobb* and *Kinsman's*
request;—and that a small sum remaining, over and above the
amount due on the mortgage, in the hands of Mr. *Kinsman,* was
by him paid over to the witness.

The plaintiffs also proved that they sued *Crague,* in the name
of *Matthew Cobb* alone, for payment of the note in question
in *April* 1819, and recovered judgment in *November* following;
and that though a small sum was collected of him by another
creditor in the course of that year, yet he was unable to pay
this judgment, and discharged himself from prison by taking
the poor debtor's oath. They also proved by *Crague* that he
was sued in *November* 1817 on the other note, which was paya-
ble in three months, of which fact he gave the defendant imme-
diate notice; and that he paid the judgment recovered in this
last suit after the issuing of execution thereon.

The defendant proved that in the years 1817 and 1818
*Crague* was possessed of sufficient visible property to pay his
debts, and that large debts were collected of him during that
period; but that no demand of payment was made of him till
he was sued in the year 1819 as above mentioned. And no
demand appeared to have been made on *Little,* or notice given
to him that the note was unpaid, till after *Crague* had taken the
benefit of the poor debtor's oath.

Upon this evidence the Judge in the Court below instructed
the jury that the facts constituted no defence to the action, and
accordingly they found for the plaintiffs, to which the defend-
ant filed exceptions pursuant to the statute.

*Frost* and *Fessenden,* for the defendant, contended—1. that
the plaintiffs were guilty of gross negligence, which exonerated
the defendant. The very nature of guaranty, which is a col-
lateral undertaking, implies something to be done by the holder
of the note; which is, to use, with all diligence, the legal means
to collect it;—and to suffer a long period to elapse without en-
forcing payment is in effect saying that the holder will look to
the debtor alone. *Moakly v. Riggs,* 19 *Johns.* 69. *Bank of N.*

Cobb & al. *v.* Little.

*York v. Livingston,* 2 *Johns. Ca.* 409.   *Stafford v. Low,* 16 *Johns.* 67.   *Beekman v. Hale,* 17 *Johns.* 134.   *Tilghman v. Wheeler,* 17 *Johns.* 326.   *Warrington v. Furber,* 8 *East.* 240.   *Phillips v. Astling,* 2 *Taunt.* 206.   *Joslyn v. Ames,* 3 *Mass.* 274.—2. That the note having been sued against the maker in the name of *Cobb* alone, the plaintiffs are estopped from claiming it as their joint property, the case finding no new facts to change the orig-inal contract.   4 *Com. Dig. tit. Estoppel A. B. Bull. N. P.* 170. *Commonwealth v. The Pejepscot proprietors,* 10 *Mass.* 155.   *Tyler v. Binney,* 7 *Mass.* 479.

*Emery* and *Kinsman,* for the plaintiffs, said that the defendant here had made himself responsible at all events, thus placing himself in the situation of a surety to *Crague,* and therefore the doctrine of laches did not apply.   It was the duty of the de-fendant to have paid the note at the end of six months accord-ing to his stipulation.   Had he done this, he might have pro-tected himself against the loss of which he now complains, and which is imputable to himself alone.—*Upham v. Prince,* 11 *Mass.* 14.—As to the estoppel—the doctrine advanced is applicable only to real estate;—and if it was pertinent to this case, the fact of *Mr. Kinsman's* not having been a party to the guar-anty, if true, should have been shewn in abatement.

MELLEN C. J. delivered the opinion of the Court.

One objection to the plaintiff's right of recovery is, that *Cobb alone* commenced the action on this note against *Crague* the promisor, and obtained judgment against him ; and that there-fore they are now estopped to aver that the property of the note is in *both* the plaintiffs.

As the defendant in this action is not bound by that judg-ment, he cannot avail himself of it by way of estoppel, as against the plaintiffs.   See *Phil. Evid.* 249. and cases cited. Besides, in the action against *Crague, Cobb* declared that the note was indorsed to him ; and being a blank indorsement, it might be alleged to have been indorsed to a person to whom *Cobb* had transferred it by delivery.   For convenience he might sue in his own name only, as indorsee, though he was not the

sole owner. And it may be further observed, that there is proof in the case of a joint interest in the two plaintiff's in this action, and no objection was made to its admission. There is nothing of the nature of an estoppel, according to the legal import of the term, applicable in this case. And we think this objection cannot prevail.

Another objection is, that the defendant is discharged from the obligation of his guaranty, by the negligence of the plaintiffs in not collecting the amount of *Crague ;* it appearing that the suit against him was not commenced, till about eighteen months after the note became due ; during which time *Crague* was solvent, and possessed of sufficient visible property. It is understood that the defendant and *Crague* both live in the same town ; and the pecuniary circumstances of the latter must have been known to him, more easily than to the plaintiffs, who reside in *Portland ;* and as it does not appear that the defendant had any doubts of the solvency of *Crague* before, or at the time *Cobb* commenced his action against him, and if he had, that he communicated them to him, so as to put him on his guard to secure the demand, or intimated a wish to have *Crague* sued for the money, we do not perceive that the plaintiffs have been guilty of such negligence as to have lost their remedy against the defendant.

But we think there is another ground on which the action is sustainable. The guaranty, in its terms, is *absolute,* that the note should be paid in six months. Sometimes a guaranty is conditional, as in the case of *Tyler v. Binny,* 7 *Mass.* 479 ; sometimes absolute, as in the case before us, and in *Bank of New York, v. Livingston,* cited by the defendant's counsel. Parties make this species of contract, like all others, on such terms as they choose. But it is contended that where a guaranty is absolute in its terms, still it is incumbent on the creditor to use all due diligence to obtain payment of the original debtor, or he will lose the benefit of it. No cases have been cited to establish this position, and the question is, why a person should not be bound as effectually and as long upon an absolute guaranty, as upon any other absolute promise, (unless perhaps, in case of *fraud* or very gross negligence on the part of him to whom it is given ;) and why the court should attach a

Cobb & al. *v.* Little.

tacit condition in *one* case, and not in the other, when in both the written engagement is absolute. In *Hunt v. Adams,* 6 *Mass.* 519, the guaranty or promise relied on was in these words; "I acknowledge myself to be holden as surety for the payment of the above note." The note had been signed by *Chaplin.* *Parsons C. J.* in delivering the opinion of the Court says, "We are satisfied that the defendant is answerable as "an original promisor, and not merely on the contingency "of *Chaplin's* failing to pay. However, it was in evidence "that when the note was delivered to *Bennett,* he and *Chaplin* "considered the defendant as holden for the payment, on the "condition that *Chaplin* could not pay. It would require some "consideration before evidence of this kind was admitted to "control the legal effect of the writing." None of the cases cited by the defendant's counsel are like this. In *Moakly v. Riggs* the engagement was collateral and conditional. In *Stafford v. Low, Beekman v. Hale* and *Tilghman v. Wheeler,* no express guaranty was given. In *Phillips v. Astling* particularly relied on by the counsel, the guaranty of the defendant was, that the debt should be paid by a bill to be drawn by *Davenport & Phinny* on *Houghton;* and the case shows that the bill, though drawn and delivered to him, was never presented to *Houghton* for acceptance or payment, or any notice whatever given to the defendant of this omission or the non payment of the debt.

In the case before us the defendant's engagement was absolute, that the note should be paid in six months. It was not paid by *Crague* or by him. It was the duty of the defendant upon such an engagement, to see that *Crague* paid the money within the time specified; and if he did not, to take notice of his neglect and pay the amount of the note himself. Accordingly the judgment of the Court of Common Pleas is affirmed.