## MOSES SAMSON vs. GILBERT R. THORNTON.

The owner of a vessel made up an account of a voyage, and handed it to the master, with a promissory note for the balance which was struck in the master's favor : The master took and carried them away, without expressing any dissatisfaction ; but returned the note, on the same day or the next, and requested the owner to procure an indorser : The owner took the note, and procured a third person to put his name on the back of it. *Held*, that such person was liable as an original promisor and surety.

Where an agreement was made for the sale of land at a certain sum per rod, and a deed was made out but not acknowledged and delivered, because the land had not been measured ; and the owner afterwards acknowledged the deed and sent it to the registry, without the knowledge of the grantee ; it was *held* that the grantee had no title, as against a creditor of the grantor, who had attached the land before the grantee had accepted the deed, and had afterwards levied an execution upon it.

ASSUMPSIT on a promissory note in these words : "New Bedford, 3 mo. 16th. 1833. On demand I promise to pay Moses Samson, or order, ten hundred and ninety three $\frac{24}{100}$ dollars, for value received, with interest." The note was signed by Benjamin Russell, and indorsed by the defendant. The declaration charged the defendant as an original promisor. Issue was joined on the plea of *non assumpsit*.

The parties went to trial before *Wilde*, J. who made the following report of the evidence : " The plaintiff, to maintain the

issue on his part, produced Benjamin Russell the promisor, who testified that the above note was given by him in payment of a balance due from him to the plaintiff for performing a voyage, as captain in the ship Ceres. At the time this note was given, he gave another for $ 600·11, at 60 days, which the plaintiff got discounted at a bank; representing, at the time, that he wanted to convert that amount into money. He took the note without an indorser, got it discounted, and it was paid by the witness at maturity. The note in suit was handed to the plaintiff, together with an account of the voyage, at the counting-room of the witness and the plaintiff went away with the note, without expressing any dissatisfaction or asking for any additional security. On the same day, or the next, (the witness did not recollect which, but believed it was not the same day,) the plaintiff brought the note to the witness, and asked if G. R. Thornton would have any objection to putting his name on it, as the note was going to remain some time. The witness replied that he presumed not; he would ask Thornton, when he came in. He did ask him, as the plaintiff requested, and the defendant indorsed it, and the witness afterwards handed it to the plaintiff.

" The same witness testified, upon cross-examination, that he agreed to sell the plaintiff a lot of land, valued at about $ 3000, and that it was agreed between them that the note in suit should go in part payment of the purchase money; that at the time the note was given, he was in good credit; that he subsequently became embarrassed and insolvent. Previous to his embarrassments, he agreed with the plaintiff for the sale of the lot of land. The plaintiff agreed to pay $ 30 a rod. A deed was made, in which no consideration was inserted, dated May 31st 1833, acknowledged December 26th, and recorded December 30th 1833. After the deed was executed by the witness, and before his embarrassments, [viz. August 27th 1833,] the plaintiff went on a voyage to sea. The consideration was not put into the deed, through a mere oversight. The witness thought it was in, before the deed was acknowledged. It was not put in at the time it was executed, because they had not then obtained the

exact measurement of the lot. The price was fixed at $ 30 a rod. After the deed was acknowledged, and while the plaintiff was at sea, it was sent to Taunton to be recorded.. When the plaintiff returned from sea, [viz. February 11th 1836,] the witness had become insolvent, and the first question the plaintiff asked him, when they met on his arrival, was, " I am sorry to hear of your misfortunes. What have you done about the lot ? " The witness answered, " I presume it is all straight. The deed has been sent to Taunton to be recorded." He said, " I am very glad of it."

" The witness's book of bills payable was produced, in which he had entered the note in suit on the day of its date, as his note to the plaintiff without an indorsement ; the defendant's name not appearing in the bill-book as indo ser, joint promisor or guarantor. One entry also appeared in the bill-book, in the following words, against the entry of this note : ' Balanced by account with Capt. Samson by sale of land.' The witness testified that this entry was made by him at the time of the sale of the land. It was considered as cancelling the note.

" The plaintiff then showed that this lot of land was attached on a writ in favor of the Marine Bank against Benjamin Russell, on the 26th of May 1835, and that the execution in that suit was levied upon the land December 27th 1837, and that it was appraised at $ 1200.

" The case was taken from the jury, under an agreement of the parties, that if upon the foregoing facts the whole court should be of opinion that the action can be maintained against the defendant, judgment should be rendered in favor of the plaintiff. Otherwise, that judgment should be rendered for the defendant."

*Colby & Clifford*, for the defendant. This note was signed by the defendant, under such circumstances, that he is not an original promisor. The note was delivered by Russell to the plaintiff, who took it away and might have negotiated it, as he did the other note which he received at the same time. The transaction was completed. *Ilsley* v. *Jewett*, 2 Met. 168. The defendant put his name on it the next day, and not at the time

when it was concocted. And the law is clear, that where one signs a note after it is finished, he is not held, unless there be some new consideration. *Chaffee* v. *Jones*, 19 Pick. 260 *Tenney* v. *Prince*, 4 Pick. 385. 7 Pick. 243. *Ulen* v. *Kittredge*, 7 Mass. 233. *Hodgkins* v. *Bond*, 1 N. Hamp. 284. *Moies* v. *Bird*, 11 Mass. 436. *Birchard* v. *Bartlet*, 14 Mass. 279. *Pierce* v. *Mann*, 17 Pick. 244. In *Hunt* v. *Adams*, 5 Mass. 362, and 6 Mass. 523, the court rely on the fact that the note was executed by the defendant, *before it was delivered* to the promisee. Such was also the fact in *Sumner* v. *Gay*, 4 Pick. 311, and in *Josselyn* v. *Ames*, 3 Mass. 274.

The plaintiff, in order to recover, should have sued the defendant as guarantor, and proved a consideration. There is no case in which a defendant has been charged in a case like this ; and Parker, C. J. (4 Pick. 387,) said there was no authority which would justify the court in extending the liability of these anomalous indorsers.

The note has been satisfied by the conveyance of land, and the acceptance of the deed thereof by the plaintiff. The deed was delivered, in legal intendment, before the land was attached, and the plaintiff ratified it, on his return from sea. *Buffum* v. *Green*, 5 N. Hamp. 71. *Hedge* v. *Drew*, 12 Pick. 144. *Porter* v. *Cole*, 4 Greenl. 20. *Church* v. *Gilman*, 15 Wend. 656 *M'Kinney* v. *Rhoads*, 5 Watts, 343. *Daniel* v. *Bratton*, 1 Dana, 210. *Harrison* v. *Trustees of Phillips Academy*, 12 Mass. 461.

*Coffin & Eliot*, for the plaintiff. The return of the note to Russell, and his ready agreement to procure an indorser, show that it had not been accepted by the plaintiff, but was merely taken, with the account of the voyage, for examination. If so, the case is not within the principle of the decisions cited by the defendant's counsel, and which are not questioned. Or the note may be considered as reissued with the defendant's name on it, and it then became a complete and valid contract binding on the defendant. *Cox* v. *Troy*, 1 Dowl. & Ryl. 38. S. C. 5 Barn. & Ald. 474. *Paton* v. *Winter*, 1 Taunt. 420. *Ward* v. *Allen*, 2 Met. 53. *Ulen* v *Kittredge*, 7 Mass. 233. *Chaffee* v. *Jones*, 19 Pick. 260

The deed of the land was not delivered, so as to vest a title in the plain:iff, before it was attached ; nor was there any acceptance of the deed by the plaintiff. He only said he was glad the deed had been sent to the registry. *Hatch* v. *Hatch*, 9 Mass. 310. *Maynard* v. *Maynard*, 10 Mass. 458. *Jackson* v. *Rowland*, 6 Wend. 666. *Jackson* v. *Phipps*, 12 Johns. 418.

If the deed could have taken effect between the parties, yet it would have been fraudulent in law, as against Russell's other creditors.

Shaw, C. J. Assumpsit on a promissory note, against the defendant as indorser, who, not being the payee of the note, if liable at all, must be held to stand in the character of an original joint promisor and surety. *Hunt* v. *Adams*, 5 Mass. 358. 6 Mass. 519. Many cases have since been decided upon the same principle. But to charge an indorser on this ground, it must appear that he was an original promisor and undertaker with the principal. If after a note is delivered, and the contract complete, a person, intending to add to the strength of the note by pledging his own credit, should indorse it, this would be a guaranty, a distinct and collateral contract, and would require a new consideration to support it. Whereas, an original promisor and surety is deemed in law to participate in the original consideration, and to be bound jointly with the principal. This distinction is perfectly well established in this Commonwealth, by the decisions which were cited by the defendant's counsel. The only question, therefore, on this part of the case, is, whether the defendant was such original promisor, or whether he became an indorser afterwards, so that, if bound at all, he was bound only as a guarantor. It appears that Russell was indebted ·to the plaintiff in the sum of $1600 or $1700, being the amount due to the plaintiff, as master of a vessel, on settlement of a whaling voyage. The plaintiff received one note for $600 at 60 days, which he got discounted at a bank, and it was paid at maturity by the promisor. For the balance, the note in question was given, payable on demand with interest. Russell made out the plaintiff's account, and signed the note in question for the balance · he then handed them to Samson, and he took them away. I· is

stated by the witness, that at that time he manifested no dissatisfaction ; but it is not stated that he agreed to accept the note without other security.  If he took these papers, not as upon a fina_ and concluded settlement, but for a general purpose, as for inquiry and examination, then he would not be bound by the mere act of receiving them ; and that he did thus take them previsionally is to be inferred from the fact that he soon came back, and expressed his wish to have a surety.  And that it was so understood by Russell may fairly be inferred from the readiness with which he received back the note to obtain an indorser. In this respect, the case differs from the late case of *Ilsley* v. *Jewett*, 2 Met. 168, where the note had been delivered and accepted, and where the maker got it back into his possession, for a special purpose, and then refused to redeliver it.  It was held to be a good and complete contract notwithstanding.  It was delivered by one party and accepted by the other, and the promisee never consented to give it up.

But there is another view.  Suppose when Samson brought the note back, and though delicately, yet actually, asked for a surety, Russell had said " no, the note has been accepted, and the account is settled, and you are bound by it."  Suppose he was right in that respect, and might have refused to take back the note ; yet in fact he did not do so, but, on the contrary, acceded to the proposal, and took the note back.  He had no motive to do otherwise, because the plaintiff held the note on demand, and had the same power to demand and compel payment or security for the note, which he would have had for the account, if it had not been settled by note.  But we consider that by acceding to the plaintiff's request, and taking back the note, in order to furnish the plaintiff with a surety or indorser, the part_es by mutual consent rescinded that contract, so far, as to treat the negotiation as still open, and when the note was indorsed and redelivered, it was the original contract of both the promisor and indorser, made upon the same consideration ; and that the defendant became liable, as such promisor and surety without any new consideration.

But there was another ground of defence, namely, that the

note had been paid and satisfied by the principal, by the convey
ance of a lot of land. That there was an agreement for such a
conveyance in satisfaction of the note seems to be established
by proof; but the question is, whether it was in fact conveyed
so as to operate as a satisfaction. Russell testified that he
agreed to convey, and the plaintiff to purchase, a lot of land at
$ 30 a rod, which would considerably exceed the amount of the
note, and that the note was to go in part pay.

It is necessary, for the purpose of deciding this question, to
compare the dates. The deed bears date May 31st 1833. It
was acknowledged December 26th 1833, and was recorded De-
cember 30th 1833. The plaintiff went on a voyage to sea Au-
gust 1833, and returned in February 1836. The attachment of
the land, by the Marine Bank, as the property of Russell, was
made on the 26th of January 1835. The question is, whether the
title was at that time vested in the plaintiff, so that he could resist
that attachment and the levy of execution afterwards made in
pursuance of it. It is very clear, that the deed was not delivered
to the plaintiff before he went to sea, and that it was not com-
pleted. The witness gives as a reason for it, that the quantity
of land had not been ascertained by admeasurement, and of
course the amount of the purchase money was not ascertained.
But it was not acknowledged till December 1833, long after the
plaintiff had gone, and it was then in the hands of the grantor.
He then, having become embarrassed, acknowledged the deed
without inserting the consideration, and sent it to the county
registry. This was the grantor's own act. A deed takes effect
by delivery. An execution and registration of a deed, and a de-
livery of it to the register for that purpose, do not vest the title in
the grantee. Nothing passes, by it. *Maynard* v. *Maynard*, 10
Mass. 456.

This is distinguishable from the case of *Hedge* v. *Drew*, 12
Pick. 141, where the father proposed to the daughter to execute
a deed to her, and to leave it with the register for her use, and
she expressed her assent to, and satisfaction with, the arrange-
ment. She thereby made the register her agent to receive the
deed. Here was no agent to accept the deed, no delivery to

give the deed effect as a conveyance, and no ratification until long after the attachment was made.

The fact that Russell entered the note as paid, in his note-book, proves nothing more than his opinion. He no doubt intended honestly to comply with his agreement, and convey the land, and did what he could to accomplish . it ; and probably thought that he had legally done it. If he was right in this belief, the note was paid ; he probably thought so, and entered it accordingly.

On the whole, the court are of opinion, that the defendant was an original promisor, that the note was not paid by a valid conveyance of the land, and that the plaintiff is entitled to judgment.

*Judgment for the plaintiff.*