## HUMPHREYS vs. GUILLOW & a.

If a note, signed by several, be written, "I promise," a change of the word "I" into "we," will be a material alteration, which will render the note void, if made without the assent of the signers.

But a subsequent ratification of the alteration will be equivalent to an original authority to make it.

The burthen is upon the holder to prove that a material alteration was authorized or assented to by the maker.

A material alteration of a note, made with the assent of the signers, will not render it void.

Humphreys *v.* Guillow.

If a material alteration be made in a deed, whether a verbal assent to it by the grantor would be sufficient, and how far the technical rule would apply, that an attorney to execute a sealed instrument must be authorized by an instrument under seal, *quære?*

After a material alteration had been made in a note, the maker said to the agent of the payee that it had been altered, and he was not bound to pay it, but would pay it; and he gave collateral security for its payment, and declared to others that he would pay it.—*Held,* that this was competent evidence of his assent to the alteration.

ASSUMPSIT, upon a promissory note, made by the defendants, dated on the 25th day of August, 1837, payable to Benjamin and Jonathan Haskell, or bearer, and by them transferred to the plaintiff.

Upon the production of the note, it appeared that it was originally written, "I promise to pay," &c., and that it had been altered, so as to read, "We promise to pay," &c.

The plaintiff offered no evidence to prove when this alteration was made, but he introduced testimony to prove that in the month of March, 1839, he called upon the defendants for payment of the note, or security, and that they met his agent, for the purpose of securing the debt by a mortgage of personal property, which was executed by both of the defendants. At this time, Tyler Guillow, one of the defendants, said that the note had been altered, and he was not bound to pay it, but that it was justly due, and he would pay it. The note was produced, and the defendants conversed together about the alteration.

In the month of September, 1840, when the writ was served, certain property was attached, and Tyler Guillow requested a person to give his receipt for it, and told him there would be no risk about it, as he should pay the debt before the term of the court. He also said to another person, before the October term, 1840, that he desired to raise some money to pay this debt.

The defendants contended that the alteration rendered the note void, and that even if there had been a subsequent promise on which the plaintiff might maintain a suit, the note would not thereby be rendered valid.

A verdict was taken for the plaintiff, by consent, subject to the opinion of this court upon the foregoing case.

*Bennett,* for the plaintiff.

*Edwards,* for the defendants.

GILCHRIST, J. The note as originally given was joint and several, and after the alteration had been made, was merely joint, so that the alteration was in a material part. *March* vs. *Ward,* *Peake* 130 ; *Clark* vs. *Blackstock, Holt* 474 ; *Hemmenway* vs. *Stone,* 7 *Mass.* 58. It is true, that the alteration is of such a nature as to be apparently against the interest of the holder of the note. This, however, cannot make any difference in the result ; for the note as altered does not contain the contract as the parties saw fit to make it. The sensible and recognized principle is, " that no one shall be permitted to take the chance of committing a fraud, without running any risk of losing by the event, when it is detected." Lord Kenyon, in *Master* vs. *Miller,* 3 *T. R.* 329. It is not an unreasonable presumption, that when the holder of a note without authority alters its terms, he does so anticipating therefrom some benefit to himself, and that in this case the holder was not aware that the note was already a joint note, and desired to make it so, for some reason which he deemed sufficient. If a bond be executed by B, as surety for A, to obtain an appeal from a justice's judgment, and the justice refuse to accept the bond, and afterwards, without B's knowledge, the name of C be inserted as an obligor and co-surety, although he execute it, and the justice accept it, the bond will still be void as to B. *O'Neale* vs. *Long,* 4 *Cranch* 60. Here it seems that the benefit to the obligor is not a reason why he should be holden. B's condition was improved by the addition of another surety, but this very addition was held to be a sufficient reason for his discharge, because the instrument was no longer evidence

of the contract made by the parties. That contract, whether judicious or not, the parties had a right to have respected, and the law will not curiously criticise the motives or even caprices by which parties may be influenced in making or refusing to alter their lawful agreements.

It is well settled law, that the alteration of a note or other instrument, by one party, without the assent of the other, will render void the instrument so altered. There may be some question as to the effect of consent, without anything further, in the alteration of a deed. In all cases, the party by consenting makes the other his agent to do the act of altering the instrument, or in fact his agent to make a new instrument in his name, for that is the effect of the operation. How far the technical rule, that an attorney to execute a sealed instrument must be authorized by an instrument under seal, would apply in such a case, may be matter of some doubt. But this difficulty does not arise in the case of simple contracts; and the rule is well settled, that an alteration of an instrument, not under seal, by one party, with the assent of the other, will not render void the instrument. *Com. Dig., Fait,* (*F,* 1;) *Shep. Touchst.* 68; *Hunt* vs. *Adams,* 6 *Mass.* 519.

It has been held by this court, that an alteration of a note will be presumed to have been made after its execution and delivery, unless there be evidence to show when it was made. *Hills* vs. *Barnes,* 11 *N. H. Rep.* 395. Such, also, is the law in England. *Henman* vs. *Dickinson,* 5 *Bingh.* 183. And the same cases hold that the burthen is upon the holder to explain the alteration, or to prove the assent of the other party. It only remains, then, to consider whether the plaintiff has proved that the alteration was properly made by the assent of the defendants. The facts proved were certainly such as to justify the inference by the jury, that the defendants, when the alteration was brought to their knowledge, assented to it. If so, then the maxim, *omnis ratihabitio retro trahitur, et mandato æquiparatur,* will apply, and the

ratification must be held to be in its effects equivalent to an original authority. If, as before suggested, an assent to an alteration be in substance an authority to make a new instrument, it will bind the parties, for the debt was not discharged by the alteration. *Sutton* vs. *Toomer*, 7 *B. & Cr.* 416. The parties might have given a new joint note for the sum due, which would have been nothing more than an assent to the present note, in its altered form. The alteration, then, having been assented to, did not avoid the note. It may be added, also, that the nature of the alteration, being apparently against the plaintiff's interest, is strong evidence to show that it was not wrongfully made.

*Judgment on the verdict.*