## [252] CROZIER, RHEA & CO. v. KIRKER.

The act which permits a party to testify in certain cases in his own behalf contemplates that the party proposing to testify shall, in his preliminary examination touching his right to do so, state the fact or facts to which he proposes to testify; and it is a question for the court to decide whether or not he could prove the fact or facts, if true, by other evidence.

Where the defendant, in an appeal from a Justice's Court, offered to testify in his own behalf, and the court directed him to be sworn, and instructed him that he was sworn not to testify to any fact he could prove by any other evidence which was within his power to obtain, and further directed the jury that they should decide whether he swore to any facts which he could prove by any other person, and if so, they should reject so much of his testimony as related to those facts : *Held,* The proceeding was erroneous.

In negotiable paper the act of one partner binds all, even though he sign his individual name, if it appear on the face of the paper to be on partnership account, and to be intended to have a joint operation.

A charge which assumes a fact to be proved which is not proved is erroneous.

If a person holds himself out as a partner, though in point of fact no partnership exists, he is liable to a creditor who contracts with the firm.

Every partner has an implied authority to bind his copartners by the making of notes and the drawing and accepting of bills for commercial purposes consistent with the object of the partnership; and to rebut this presumption of authority there must be proof of fraud or of a knowledge of the want of authority or of notice.

Appeal from Galveston. The appellants brought suit against J. Lombardo and John Kirker, before a justice of the peace, upon a promissory note in the following words :

"$53,20. GALVESTON, *May,* 26th, 1848.

"Forty days after date we promise to pay Crozier, Rhea & Co., or order, fifty-three 20-100 dollars; value received.

(Signed) J. LOMBARDO & JOHN KIRKER."

The justice gave judgment for the plaintiffs, and the defendant Kirker appealed to the District Court. The case was tried in the District Court, at the

## Crozier v. Kirker.

Spring Term, 1849. The defendant Kirker filed in that court an affidavit to the effect that he did not sign the note sued on nor authorize any person to sign it for him. At the trial the defendant Kirker [253] offered to testify, and the plaintiff requested the court to restrain him from testifying to any fact which he could prove by another person. The court directed him to be sworn, and instructed him that he was sworn not to testify to any fact he could prove by any other evidence which it was within his power to obtain. In the progress of the examination the counsel for the plaintiff objected that the witness was proceeding to testify to facts which appeared from other testimony previously given in the case to be within the knowledge of other persons; but the court allowed the witness to proceed, and ruled that the jury should decide whether he swore to any facts which he could prove by any other person; and if so, they should reject so much of his testimony as related to those facts; to which ruling the plaintiff excepted.

It was proved that J. Lombardo and John Kirker were partners in an establishment in Galveston for the retail of spirituous liquors in the months of March, April, and May, A. D. 1848. Crozier, Rhea & Co. were, during the same period, merchants selling groceries, liquors, &c., in the same place. The note sued on was signed by Lombardo. About the 1st of June, 1848, Lombardo went down westward with an adventure of merchandise, and the defendant Kirker told one of the witnesses at the time that he and Lombardo were in partnership in that adventure also; Lombardo and Kirker, during the same period, purchased a house in partnership; and one witness said everybody knew they were in partnership in the bar-room. Sometimes one would go out and purchase on credit of the partnership, and sometimes the other. In August, 1848, Kirker gave public notice that he would not be responsible for any debts contracted by Lombardo after that time. Lombardo admitted he made the note sued on, and that it was made on the partnership account. Kirker swore that he did not authorize Lombardo to make the note; that it was given for liquors and goods which Lombardo had taken down westward in the adventure spoken of; and that he, Kirker, was not in partnership in that adventure, [254] and had not received any benefit from the goods for which the note was given. Kirker and Lombardo had signed and used the name of J. Lombardo & Co.

The court instructed the jury "that, in order to bind all the partners, the note given in evidence must be signed with the partnership name and style; and that a limited partnership in the bar-room did not authorize either to charge the other for goods not in the nature of the partnership business."

To this instruction the plaintiff excepted, and asked the court to instruct the jury—

"1st. That the partnership name may consist of the names of the persons composing the firm; and in the absence of proof of a particular name, the names of both, signed by either, would be *prima facie* binding on both if a partnership be proved.

"2d. That if the jury found from the evidence that Lombardo and Kirker were partners, then either could sign the names of both to a promissory note; and it lies upon the one claiming not to be bound to show that the note was not given for partnership purposes, and that the person to whom the note was given knew it or had cause to suspect it.

"3d. That if the partnership be proved, and it be proved that one of the partners made the note in the name of both the partners, then the note is evidence of a partnership debt."

Which last instruction the court gave with this addition: "Unless the jury find from the evidence that it was given for other articles than those of the nature of the partnership business."

The first and second of these instructions the court refused. The jury returned a verdict for the defendant, upon which the plaintiff moved for a new trial, which was refused. There was judgment for the defendant, and the plaintiffs appealed.

### Crozier v. Kirker.

*O. C. Hartley*, for appellant. The 57th section of the [**255**] act regulating proceedings in the District Courts (Acts of 1846, p. 363) obviously contemplates that the party shall first make oath that there are certain material facts which he has no other evidence to prove except his own oath; after which he may be sworn touching those facts. And the court, not the jury, is the proper judge whether or not the party in his testimony transcends the privilege allowed him by the statute.

II. The charge given by the judge assumes facts. It assumes that there was a partnership name, and that the partnership was a limited one. Charges should always be given hypothetically. (1 Da. R., 273; 3 A. K. Marsh. R., 86; 1 Tex. R., 312.) The first proposition in the charge is not law in the abstract, and is most particularly not law when applied to this case. (5 Mon. R., 382; 1 Camp. N. P., 384; 3 Kent. Com., 41; Gow on Part., 39; Cowp. R., 814.)

III. There can be no question at all that every charge asked by the plaintiff is in its terms strict law. The proof of the partnership and the making of the note, which appeared upon its face to be intended to have a joint operation, threw the burden upon Kirker of proving some fact which would have negatived the implied authority which one partner has to bind the firm by making their promissory note.

*J. B. Jones*, for appellee.

WHEELER, J. In the decision of this case it becomes material to consider the rulings of the court—1st, in admitting the defendant Kirker to testify; 2d, in the instructions to the jury; and 3d, in refusing a new trial.

1. The first question here presented must be determined by a reference to the 57th section of the act to regulate proceedings in the District Court. This section was intended to provide for a class of dealing so trivial in amount as not to justify in all cases the obtaining of formal proofs. It provides [**256**] that where the party will make oath that he has no other evidence than his own oath to establish a material fact, he may himself testify touching such fact. This innovation upon the common-law rules of evidence was introduced from the supposed necessity of the case, and is allowed where there is a destitution of other means of proof; but it is not to be extended beyond the express enactment. This evidently contemplates that the party proposing to testify in his own case shall in his preliminary examination touching his right to do so state the fact or facts to which he proposes to testify. He is not to be allowed to testify generally, but only as to such facts as he may be unable to prove by other evidence. This is the evident meaning of the statute, and it was not admissible to extend its operation beyond the obvious import of its terms. The court therefore erred in not requiring the party to state the facts touching which he proposed to testify, and in not confining his testimony to those facts. But the party was not only permitted to testify generally, but when it was objected that he was speaking as to facts which it was apparent he could prove by other evidence, the court still refused to arrest his testimony, and ruled that "the jury should decide whether he swore to any fact which he could prove by any body else; and if so, they should reject so much of his testimony." This, it would seem, was to submit to the jury a difficult inquiry; for it is not easy to perceive how they could know whether or not the party could prove the same facts by other evidence. It was at least an inquiry which it did not belong to them to determine.

2. As to the rulings of the court respecting instructions to the jury.

The first branch of the instruction given—that is, "that in order to bind all the partners, the note given in evidence must be signed with the partnership name and style"—is erroneous. On the contrary, in all contracts concerning negotiable paper, the act of one partner binds all, even though he signs his individual name, if it appear on the face of the paper to be [**257**] on partnership

## Crozier v. Kirker.

account, and to be intended to have a joint operation; and the holder may, at his election, enforce payment either jointly against the firm or separately against the party whose signature is attached. (Gow on Part., 39; 3 Kent Comm., 41; 11 Johns. R., 544; 6 Mass. R., 519.) Here one partner had signed the names of both, and there could be no doubt from the face of the paper that it was intended to have a joint operation. The instruction, therefore, was not only erroneous as a legal principle, but it was so especially in its application to the case in evidence.

The remaining branch of the instruction, viz, "that a limited partnership in the bar-room did not authorize either to charge the other for goods not in the nature of the partnership business." is erroneous in two respects: 1st. It assumes the fact to have been proved, instead of leaving it to the jury to find the fact from the evidence. (Cobb v. Beal, 1 Tex. R., 342; Lightburn v. Cooper, 1 Da. R., 273.) 2d. It was not proved as assumed that the partnership was "limited" to the bar-room; but, on the contrary, there was evidence that the defendants were also partners in the "adventure down west," in furtherance of which the note in suit was given.

The first proposition asked by the plaintiffs as an instruction was clearly correct, and ought to have been given. It is difficult to conceive upon what ground it was refused. It was not only correct in the abstract, but it was a proper instruction to have been given in this case. There had been no proof that this firm was known by any particular name. They had signed and used the name of "J. Lombardo & Co.," but whether on more than one occasion does not appear, nor does it appear that that was the name by which they were accustomed to act and contract or by which they were known.

The second and third propositions asked as instructions by the plaintiffs are correct, with the qualification that it be understood, as it doubtless was supposed to be, that the making [258] of the note referred to was within the scope of the partnership, or that it was given in a partnership transaction; and this ought, perhaps, to have been expressed.

3. As to the ruling of the court in refusing a new trial.

This was asked on various grounds, but it will only be necessary to consider that which relates to the finding of the jury upon the evidence. It was proved that the note sued on was given in a partnership transaction—the adventure in which the defendant Kirker had admitted that he was a partner. The only evidence relied on to discharge the defendant Kirker from liability upon the note was his own testimony that he did not authorize Lombardo to make the note, and that he, Kirker, was not a partner in the adventure. It may be true that Kirker did not expressly authorize Lombardo to make this note, but it is certainly true that he held himself out to third persons as a partner in the transaction in which it was given. He so stated to the witness. And this was an implied authority to Lombardo, his ostensible partner, to use his name, and, as to third persons, was binding upon him, whatever may have been the private understanding between the partners. If a person hold himself out as a partner, though in point of fact no partnership exists, he is liable to a creditor who contracts with the firm. (Comyn on Con., 481; 3 Kent Comm., 41.)

Where (says Starkie) two or more unite in partnership for carrying on a particular trade or other purpose, they become, in point of law, so identified with each other that the acts and admissions of any one with reference to the common object are the acts and declarations of all and are binding upon all. The very constitution of this relationship furnishes a presumption that each individual partner is an authorized agent for the rest. (2 Stark. Ev., 582.) And the acts and representations of parties may be conclusive evidence of their partnership in favor of strangers who are not cognizant of their private arrangements, but who must be guided by external indications, although as between themselves they are [259] not partners. (Id., 583.) Hence, if a person has

represented himself to be a partner, and has been trusted as such, he is bound by that representation, and it is no defense for him to show that he was not in fact a partner. (Id., 586.) Every partner has an implied authority to bind his copartners by the making of notes and the drawing and accepting of bills for commercial purposes consistent with the object of the partnership. (7 T. R., 210; 10 East R., 264; 13 Id., 175.) And to rebut this presumption of authority there must be proof of fraud or a knowledge of the want of authority, or notice to the party seeking to charge the firm that the other partners would not be responsible for the acts of their copartners. (2 Stark. Ev., 143, 589.) There is no pretense of fraud in the present case, and the notice given was not until long after the making of the note sued on. The facts relied on by the defendant constituted no defense to the action, and the plaintiff, under the evidence, was entitled to recover. The verdict, therefore, was against evidence, and ought to have been set aside and a new trial granted.

Judgment reversed.