McKinney, J.,
delivered the opinion of the court.
This was an action of assumpsit by the endorsee against the acceptor of a bill of exchange.
The bill, in its original form, purported to have been drawn by “Fitzsimmons & Crawford” in favor of John Cox, for $900. The bill was endorsed by Cox, and was afterwards accepted by Blair, the plaintiff in error, for the accommodation of the drawers.
Previous to the drawing of this bill, another bill had been drawn by the firm of Fitzsimmons & Crawford, then in existence, which had been endorsed by Cox, and accepted by Blair, for the accommodation of the drawers; and was discounted by the Branch Bank of Tennessee, at Rogersville.
*85 Said firm of Fitzsimmons & Crawford, consisted of C. H. Fitzsimmons & James Crawford. Before the drawing of the present bill, James Crawford, one of the partners, died, and John II. Crawford was appointed and qualified as his executor.
The present bill was drawn for the purpose of having it discounted by said Bank, and the proceeds applied in discharge of the first bill, which had matured.
The names “ Fitzsimmons & Crawford,” to the bill in controversy, were signed by John II- Crawford, executor of the deceased partner. After the acceptance of the bill by Blair, John II. Crawford and C. H. Fitzsimmons, jointly presented it to said Bank for discount; but the Bank refused to receive or discount it, unless the individual names of said John H. Crawford, and C. H. Fitzsimmons, were placed on the bill as drawers; and this was immediately done, underneath the names “ Fitzsimmons & Crawford,” the former signing as executor of the deceased partner; and the latter, as surviving partner of said firm. This was done without the knowledge or assent of the acceptor.
The bill was dishonored, and the Bank seeks to recover from the plaintiff in error, as acceptor, the amount due thereon.
The plaintiff recovered in the Circuit Court; and an appeal in error has been prosecuted to this Court.
1. The principal error relied upon is, that the addition of the individual names of J. II. Crawford and C. TI. Fitzsimmons to the bill, after acceptance, without the assent of the acceptor, was a discharge of the liability of the latter. It is argued that this was an alteration of the bill; and, that having been made by a party, it is wholly unimportant whether or not it was a material alteration : that the law, in odium spoliator is, holds it to make the instrument void.
It is not necessary to the decision of the case under consid *86 eration, that we should question the position assumed, that the general principles respecting the alteration of deeds, are applicable to all other instruments, though the correctness of this position has been questioned in some of the more recent cases. See Hunt vs. Adams, 6 Mass. R. 519. It may be admitted, too, that the alteration of an instrument, in the legal sense of the term alteration, will have the effect of avoiding it.
It is proper to observe, however, that the ancient doctrine upon this subject has been materially relaxed and modified by modern adjudications. See 1 Greenleai’s Ev. sec. 566, and cases cited in the notes. A distinction is taken between the spoliation and the alteration of an instrument, as to the legal consequences. “ The term” (alteration) “is, at this day, usually applied to the act of the party, entitled under the deed or instrument; and imports some fraud or improper design on his part to change its effect.”
If the act done upon the instrument does not change its meaning, or language,' or give to it a different legal effect; and no one can be misled or prejudiced thereby, it is not an alteration in the sense of the law, Id. sec. 565-566. So, if the law would have supplied the words which were after-wards inserted or added by the party, this will not vitiate the instrument: the assent of the other party will in such cases be presumed; and it is not an alteration, in the legal sense, which will avoid the instrument; Id. sec. 567.
The cases to which we have been referred, although apparently inconsistent with each other, in some instances at least, do not conflict with the general principles before stated. The English cases, decided upon common law principles, and without any reference to the policy of the stamp laws, and the current of American decisions, concur in the general principle, that the alteration of a bill or note, to have effect of avoiding it, must be in a material part, and without the con *87 sent of the other party, or parties. Chitty on Bills 204, (Ed. of 1839,) 1 Steph. N. P. 788, 1 Smith’s leading cases, note to Master vs. Miller, and by Miller, by American editors.
From the foregoing authorities the principle is deducible, that the addition or insertion of words in a bill or note, which do not affect the rights or responsibility of the parties, or which the law would supply, will not vitiate it, even though done by a party, without the consent of the other parties, in the absence of any fraudulent purpose or intent to change its legal effect.
It follows, therefore, that the addition of the proper names of John H. Crawford and C. H. Fitzsimmons, to the bill in question, after acceptance, and without the consent of the acceptor, was not a material alteration thereof, and its validity is not thereby affected. It was, in effect, but adding the Christian names of the drawers, whose surnames had been affixed to the bill, before acceptance; and were so affixed by the mutual assent of the drawers, as we must infer from the fact, that they jointly presented the bill for discount, at the Bank, immediately thereafter. The omission of the Christian names of the drawers, was one which the law supplied; and which did not affect their liability to the acceptor, or other parties : their liability was precisely the same before as after the addition. And so far as respects the rights of the acceptor, should he be compelled to pay the bill, his remedy against the drawers, is not by a suit on the bill, but by an action against them on their implied contract to indemnify him.
2. From the foregoing view of the case, it follows that, in legal effect, the bill is not misdescribed in the declaration, and that no material variance exists between the bill produced in evidence and that described in the declaration.
3. We hold that notice of the presentment and non-payment of the bill was not necessary, so far as respects the acceptor. Story, in his treatise on bills of exchange, lays it *88 down (sec. 356,) that in America, the received doctrine seems to be (however difficult it is to maintain it upon principle) that, in respect to the acceptor, no presentment or demand of payment of a bill payable at a Banker’s, or other particular place, need be made at that place, on the day when the bill becomes due, or afterwards, in order to maintain an action against him. The acceptor of a bill, is regarded as standing in the same relation as the maker of a note. He is the principal, and not a collateral debtor. 4 Johns. Rep. 183, 17 Johns. Rep. 248, 13 Peters’ Rep. 136, 1 Yerg. 502, 2 Yerg. 81.
4. Certain depositions were objected to on the trial, by the defendant, first, on the ground that the Justice, by whom they were taken, omitted to state in his certificate, that he was not related to either of the parties in the cause; but the court overruled the objection and admitted said depositions. In this, we think, there was no error. The act of 1801, ch. 5, sec. 32, applies exclusively to depositions taken in Equity causes ; and not to depositions in cases pending in courts of law. Nor is there any rule of court, now in force, applicable to this subject in the latter courts. But the act of 1801, even if applicable to courts of law, does not require the certificate to show that the commissioner is not related to the parties.
A second objection to said depositions was, that the same day was fixed, in the notice, for taking one of the depositions, at the city of Baltimore, State of Maryland; and two others at Rogersville, in the State of Tennessee. The defendant below, did not attend at either place to cross-examine : nor is'it shown that he has been at all prejudiced by his non-attendance. Indeed, as respects the deposition taken at Baltimore, he could not possibly have been prejudiced, because the testimony is not only immaterial, but wholly unnecessary. And if he might, by possibility, have been affected by the testimony taken at Rogersville, he offers no reason, whatever, for his non-attendance there. It is certainly true, that the party has *89 a right to be present, in person, to cross-examine witnesses whose depositions are sought to be taken against him; and reasonable opportunity must be afforded him to be thus present. But, upon the facts of this particular case, the plaintiff in error does not stand in an attitude to avail himself of this objection.
The judgment will be affirmed.