Inhabitants of South Berwick *v.* Huntress.

INHABITANTS OF SOUTH BERWICK *versus* WILLIAM HUNTRESS *& als.*

A party executing a deed, bond or other instrument, and delivering the same to another, as his deed, knowing that there are blanks in it to be filled, necessary to make it a perfect instrument, must be considered as agreeing that the blanks may be thus filled after he has executed it.

And this principle includes the insertion of the penal sum of a collector's bond.

ON EXCEPTIONS from *Nisi Prius*, DANFORTH, J., presiding.

DEBT on a collector's bond. Plea *non est factum.*

The main facts sufficiently appear in the opinion.

The verdict was for the defendants, and the plaintiffs excepted.

*Tapley & Smith*, for the plaintiffs.

*Howard & Cleaves*, for the defendants.

KENT, J.—The exceptions present a single question for our determination. The counsel for the plaintiffs requested this instruction, which the facts of the case made pertinent and applicable, "that a party executing a bond, knowing that there are blanks in it to be filled up, necessary to make it a perfect instrument, must be considered as agreeing that the blanks may be thus filled after he has executed the bond." The presiding Judge, in his instructions, assented to this as correct, when limited "to such matters appearing on the face of the instrument to be certain, such as the names of the sureties, who had signed, but that this rule would not apply to the *penal sum* in the bond; that being uncertain in its amount." He further instructed the jury, in substance, that they must be satisfied, from all the evidence, that Huntress was authorized by the defendants to insert the penal sum; and, if not so proved, that the insertion would be a material alteration, and render the bond "in-

valid." The jury must have understood that something more than the facts assumed in the request must be established by proof.

It seems to be now well settled, that where a party executes a deed, or bond, or other instrument, and delivers the same to another, in an imperfect state, and gives authority to that person to fill up the blanks, and thus perfect the instrument—and he does so—its validity cannot be controverted. This authority may be by parol. It may be implied from the facts proved, when those facts, fairly considered, justify the inference. When the authority is established, either by evidence of express authority, or by implication, the power will extend as far as such express or implied authority is given. The law on this subject has recently been stated by the Supreme Court of the United States, in *Drury* v. *Foster*, 2 Wallace, 24.

There is a class of cases where it is held that it is not a material alteration to insert a word or words that the law would itself supply, as the word " hundred" before " pounds," where the condition of the bond first stated that the full sum of one hundred pounds shall be paid by instalments specified, and then added the words "until the sum of one——pounds shall be paid." The Court held that it was plain, what the meaning of the parties was, and what the party signing intended to be bound for. *Waugh* v. *Bussel*, 5 Taunton, 707.

In the case of *Hunt* v. *Adams*, 6 Mass., 519, the same rule was applied to the case where the word " year" had been inserted before the words " of our Lord." In this case, C. J. PARSONS discusses somewhat the general doctrine, and says that the consent of the obligor may as well be implied from the nature of the alteration, as when expressed. He cites several cases, where, without any evidence of assent beyond the instrument itself, alterations had been made by filling blanks. To the same point is the case of *Brown* v. *Pinkham*, 18 Pick., 172.

In the case at bar, the requested instruction assumes that

there was no direct evidence of authority to fill the blanks, beyond the fact that the party executed the bond, knowing that there were blanks to be filled up. The question, then, is one as to the implied authority of the person, for whose use the bond was made, to fill any or all the blanks, before delivering the bond to the town.

It may be likened to a case of an accommodation note, indorsed when imperfect, and left with the maker, for whose use it was made, to be negotiated by him. In numerous cases of this kind, it has been held that an indorsement on a paper without sum, or date, or time of payment, will hold the indorser for any sum, payable at any time which the person to whom the indorser entrusts it, chooses to insert. *Violett* v. *Patten*, 5 Cranch, 142 ; *Russel* v. *Longstaff*, Dougl., 514. Or, where the name of the payee is left blank. *Crachly* v. *Clarance*, 2 Maule & Sel., 90. Or, where indorsements on blank pieces of paper were left with a clerk, the party indorsing expecting and intending that promissory notes would be written on them. *Putnam* v. *Sullivan*, 4 Mass., 45.

Where the indorsers commit a promissory note to the maker, with a blank for the date, they authorize him to fill it up with what date he pleases, even a date prior to the day of the actual making of the note, which was payable in 60 days from date. *Mitchel* v. *Culver*, 7 Cowen, 336. So, if the sum be left in blank, it may be filled up. *M. & F. Bank* v. *Schuyler*, 7 Cowen, 337, in note.

Where it appears that the parties *intended* that the note should be for $800, and it read, pay " eight," with a blank space, the maker, without the assent of the indorser, may insert the words " hundred dollars," and the indorser will be holden. *Boyd* v. *Brotherson*, 10 Wendell, 93.

Where a party intended to give a note for the amount of a debt, which amount he minuted in figures on the margin, but wrote the note for $300 instead of $334, (the sum on margin,) it was held that the creditor may, without express

authority, insert the words and sum omitted. *Clute* v. *Small*, 17 Wendell, 238.

In each of these cases, the decision seems to rest upon the fact that the filling up, or insertions, were in accordance with the intention of the parties, and to carry out and fix the liabilities actually agreed upon or assented to.

There are numerous cases, analogous in principle to the one before us. They are cases, where the Court has, in effect, made the insertions itself, to carry out the obvious intentions of the parties. In all such cases, it is fair to infer, that if they had been made by a party, they would have been sanctioned by the Court. The Court, in this matter, would seem to have no greater legal right than an individual.

Thus, in the case of *Coles* v. *Hulme*, 8 B. & C., 568, (15 E. C. L., 299,) where the penal sum was stated as 7700, it was held that the word "pounds" must be inserted by the Court.

*Green* v. *Walker*, 37 Maine, 27, where a replevin bond bound the plaintiff to pay to himself costs, damages, &c., it was held that it should be read as if defendant's name was inserted in place of plaintiff's. In this case will be found citations of numerous authorities on this subject. *Coolbroth* v. *Purrington*, 29 Maine, 469.

It may, perhaps, be doubtful, whether some of these cases do not go beyond the true limit; particularly the one cited from 17 Wendell, where the party was allowed to insert an additional sum into the body of a note, *which was a perfect instrument before.* The amendment and interlineation would seem to make a new contract, and to vary and alter essentially the one written and signed, without the assent of the maker, on the single ground that, by evidence *aliunde*, it appeared probable, or reasonably certain, that the party intended to give a note for the larger sum inserted afterwards.

There seems to be a manifest distinction between the addition of new words, or the erasure of words and the substitution of others, changing the liability, in an instrument

perfect when signed, and the insertion of words to fill up blanks, which the party signing knew must be filled up to make the bond or contract perfect in form or substance. In the one case, it is, in effect, making a new contract; in the other, it is but finishing and making perfect the contract agreed upon.

The law on this subject in Massachusetts, before the separation, is stated by C. J. PARSONS, in *Smith* v. *Crooker*, 5 Mass., 538. That was a case on a collector's bond, in which, after the surety had signed, a blank had been filled. The Judge, after stating the general principle, that it would not be an alteration, which would avoid the bond, to fill up blank spaces left, if the party executing the bond agrees that it may be afterwards filled up, says, — " And the party executing the bond, knowing that there are blanks in it, to be filled up by inserting particular names or things, must be considered as agreeing that the blanks may be thus filled, after he has executed the bond." This decision is cited and accepted by the counsel on both sides, as the rule to be applied to the case at bar.

It was adopted by the presiding Judge, but he ruled that the filling of the blank space, left for the insertion of the penal sum, did not come within the rule. The correctness of that ruling is the question now presented by the exceptions.

It is evident that the implied authority is limited, but it clearly may extend beyond mere matters of form, or the mere insertion of words, which the law itself would supply. It may, as it has been shown, extend to those matters which are required to make it a binding and perfect instrument.

We think that when a party signs a bond, and delivers it to another, not stipulating or expecting that the paper will be returned or afterwards exhibited to him, but be delivered to the obligee when perfected, and, when he so delivers it, there are blanks in it to be filled up, before it can be perfected, and he knows the fact, those blanks may be filled up, without any further knowledge or assent on his part, — pro-

vided that the insertions thus made do not change the relations of the parties, or alter, or vary the actual agreement made, or create any new liability, or enlarge any responsibility embraced in the contract between the parties, but only make perfect in writing what was actually agreed upon. It cannot be controverted when thus completed. In the case at bar, the whole contract or agreement is manifest from the *condition*, which was a part of the bond when signed. How far the rule may apply to cases where the whole proof of the agreement is found in extraneous evidence, we are not now called upon to decide. It is clear, that, at all events, the evidence must be of a plenary and conclusive character, and leave no doubt of the exact character and terms of the bargain or understanding between the parties.

We are aware that a distinction has been taken between parol contracts and those under seal, and that, in some cases, it has been held that the rule cannot be applied to bonds or deeds. A recent case in Massachusetts, *Burns* v. *Lynde*, 6 Allen, 305, seems to favor this view. That, however, was a case where, when the seal and signature were affixed to the paper, it was a printed form of a deed, in which *none* of the blanks had been filled up. As the Court say, "when the paper was delivered, it had no validity or *meaning*. The filling of the blanks created the substantial parts of the instrument itself, as much so as the signing or sealing." The defendant filled the blanks, after it was given to him by the signer, in her absence, by entering the names of the parties, the description of the land, and the *agreement* of release of dower on her part, and the date, and other words necessary to complete it. The defendant offered to prove that, when she signed it, she authorized him to fill it up as he did, and that, after it was filled up and the husband had executed it, the defendant informed her of the facts, and she thereupon verbally assented to what had been done, and agreed that it should be taken to be her deed, duly executed. This evidence was excluded; and the Court held, that

the prior authority did not give a right to make this entire deed, and that the subsequent assent did not amount to a new delivery.

That case differs from the one before us in several particulars; especially in the point that the paper or deed, when signed, contained nothing expressive of the intentions of the parties, or a description of the property to be conveyed. Nothing could be gathered from it.

The examination of various cases in this country and in England shows that, whilst in some of them the strict rule has been recognized, yet there are none that deny the proposition that in some cases blanks may be filled in sealed instruments by a third person, who is not authorized by power under seal. The only distinction taken between parol contracts and those under seal is a purely technical one, viz., that an authority to make a deed or execute a sealed instrument for another, must be of as high a character as the instrument, — i. e., be under seal. It is an unquestioned doctrine of the common law that a person, not authorized by power under seal, cannot *execute* a sealed instrument for another, or change a parol contract into a specialty. Now, if it is the absence of the seal on the authority that prevents the validity of the execution, it would seem that nothing could supply it, not even consent by parol. And yet, as before stated, all the cases seem to recognize the validity of such filling up, if done in the presence of the grantor or obligor. A distinction is taken between express consent inferred from the act being done in the presence of the grantor, and consent given before or after, or implied consent. *Warring* v. *Williams*, 8 Pick., 322; and *Warring* v. *Williams*, 8 Pick., 325; *Hudson* v. *Revett*, 5 Bingham, 368, (15 E. C. L., 467.)

In these cases it is assumed that the act is done by the assent and authority of the grantor, because he is *present* when it is done by another. And, yet, if the authority *must be* under seal, where is the evidence of it? The whole evidence is parol; the fact of the presence and the assent is

proved by parol. The act derives its efficacy only from authority dependant on other sources than a seal. It is *consent* that gives it vitality, and that consent, it is proved by parol, was given by parol. Why may not consent be established by proof that the authority was directly given before the act was done, and when the paper was not before him? There is no clearer parol authority in one case than in the other. It *is*, after all, a mere question of assent. Now, consent may be implied as well as expressed, and, when fairly and legally inferred, it is actual and effective consent, as much so as when direct authority is shown by parol. It would seem to follow that the rule, requiring authority under seal, should either be strictly enforced in all cases of bonds or deeds, so that no interlineations or insertions can be legally made without such power, or the rule should be, that such filling up may be made when authority or consent is clearly established by parol. And this on the ground that, if necessary, the act may be considered as having been done, in substance, by the grantor himself. When the instrument is a sealed instrument, when signed by the party, the filling in of the blanks afterwards by another is not, strictly speaking, the *execution* of a sealed instrument. That has already been done by the party himself. The third party does not make it a specialty by his act. It was one before. The filling up merely perfects an imperfect sealed deed or bond. This is the view taken by the English Court, in *Hudson* v. *Revett*, 5 Bingham, before cited. The Court say, (by GUSSELEE, J.,) "The way in which I consider that this deed is good, is this—that it was an imperfect execution, with an *agreement* at the time that it should take effect when the blanks were filled up." On this point, see *Knapp* v. *Maltby*, 13 Wendell, 587.

In one of the most recent cases, in England, that of *Eagleton* v. *Gutteridge*, 11 M. & W., 466, it was held, that the filling in of a blank in a power of attorney under seal, which was sent from a foreign country, did not invalidate it, on the ground that consent might be inferred.

The Court in Massachusetts, in the learned opinion before cited of *Burns* v. *Lynde,* admit that the American decisions are generally against the strict views taken by them. This is undoubtedly so. In Pennsylvania, in the case of *Wiley* v. *Moor,* 17 S. & R., 438. In numerous cases, in New York, *Bank* v. *Kostright,* 22 Wend., 364; *Wooley* v. *Constant,* 4 Johns., 54; *Exparte Decker,* 6 Cowen, 60; *Exparte Kerwin,* 8 Cowen, 118; *Humphreys* v. *Guellow,* 13 N. H., 385. These cases, and numerous others in different States, recognize *consent* as the essential fact, and do not give any greater effect to consent, when express or implied from the presence and presumed knowledge of the signer, than when fairly implied from his acts or declarations. Nor do they distinguish between prior and subsequent assent.

The Supreme Court of the United States had, in several cases, indicated the same general views. (*Speake* v. *United States,* 9 Cranch, 28; *White* v. *Vermont R. R.,* 21 How., 575.) And the same Court, in the recent case of *Drury* v. *Foster,* 2 Wallace, 24, has distinctly and unqualifiedly settled the question. The Court say, — "We agree that, by signing and acknowledging the deed in blank, and delivering the same to an agent, with an express or implied authority to fill up the blank and perfect the conveyance, its validity could not well be controverted. Although it was at one time doubted whether a parol authority was adequate to authorize an alteration or addition to a sealed instrument, the better opinion, at this day, is, that the power is sufficient."

The rule invoked is purely technical. Practically, there is no real distinction in this matter between bonds and simple contracts. There is no more danger of fraud or injury or wrong in allowing insertions in a bond, than there is in allowing them in a promissory note or bill of exchange. Both are agreements or contracts, and in neither can unauthorized alterations be made with impunity. Considering that the assumed difference rests on a mere technical rule of the common law, we do not think that the rule should

be extended beyond its necessary limits, viz.,—that a sealed instrument cannot be *executed*, by another, so far as its distinguishing characteristic as a *sealed* instrument is in question, unless by an authority under seal.

It remains to apply the principles before stated to the case before us. The ruling of the Judge was in favor of the plaintiffs so far as the insertion of the names of the sureties who had signed, and all other matters appearing on the face of the instrument to be certain. The only question is as to the insertion of the penalty. The case, as stated in the report, sets out various questions of fact which were in dispute, and recites that there was evidence *tending* to show that the bond was in a certain condition, when signed, as to blanks and seals. We, however, can only look to the rulings and the request, when the facts are not stated as agreed upon or settled. The request assumes that the party had signed and *executed* the bond, before parting with it. This could only be done by sealing it himself. The ruling, on the point of the insertion of the penal sum, assumes that, if Huntress was authorized by the defendants to insert the penal sum, he might do so. But that this authority must be distinctly proved, and required other evidence to sustain it, than was required to authorize the insertion of other matters, appearing on the face of the paper to be certain. The reason given is that the penal sum of the bond is uncertain.

At first view, the penalty seems to be a vital and controlling part of the bond. But, in truth, in a bond with a condition, subject to chancery, the *condition* is the essential portion. The penal sum is almost a matter of form. In this case, the parties intended to execute a bond to secure the town from loss by the defaults of the collector. This was the whole substance of the agreement. This was what the parties understood and assented to. This is the whole of the condition, as expressed in the bond. Now, no penal sum, however large, could extend this liability. If large enough to cover the possible deficiencies, any increase of

that amount would be simply nugatory, and of no avail to charge the signers. If a less sum is inserted, it may save the signers from a portion of their assumed liability, and therefore could not be objected to by them, on the ground that it enlarged the responsibility assumed by them in the condition. So that, "*quacunque via data*," the insertion of *any sum* as the penalty cannot charge the obligors beyond the actual liability secured in the condition, which was in the bond when signed. The insertion of a penal sum, therefore, operated simply to perfect the bond according to the original understanding, without injuriously affecting the signers. In a bond like this, it is one of those things, which PARSONS, C. J., says, may be inserted without thereby avoiding the bond. The principle was correctly stated by the Judge, but we think he erred in distinguishing between the penal sum and the other insertions. The case must go back for a new trial on the principles stated in this opinion.

*Exceptions sustained.*
*New trial granted.*

APPLETON, C. J., DAVIS, WALTON, BARROWS and DANFORTH, JJ., concurred.