STATE OF MINNESOTA *vs.* HENRY YOUNG and others.

May 29, 1877.

**Authority to fill Blank in Sealed Instrument may be Implied from Circumstances.**— Action on a county treasurer's bond. *Held*, 1. That authority to fill a blank in a sealed instrument may be given by parol. Such authority may be either express or implied from circumstances. It will be implied from circumstances whenever these, fairly considered, will justify the inference.

**Same—Facts held Sufficient to Warrant such Implication.**—2. The facts in this case considered, and *held* sufficient to establish an implied authority from the sureties to the board of county commissioners, to insert a penal sum in the blank left in the bond.

**Bond Signed on Sunday, but Delivered on Secular Day.**—3. Also, that a bond is not "executed" until delivery; therefore, although signed and sealed on Sunday, yet, if not delivered until a succeeding secular day, it is valid.

**County Treasurer's General Bond does not cover School Fund.**—4. Also, that the sureties on the general bond of a county treasurer are not liable for his failure to pay over moneys collected by him on account of school and university lands. For such default, only his sureties on his special bond, required by Gen. St. *c.* 38, ₰ 39, are liable.

This act was brought, in the district court for Sibley county, against the defendant Young, as principal, and the defendants Lorenz Wolf, Louis Cramer, and Thomas Welch, as sureties, upon the official bond of the defendant Young, as county treasurer of that county. It was alleged in the complaint that, during the term of office for which the bond was given, the defendant Young, as county treasurer, received, and failed to account for and pay over according to law, the sum of $3,524.22, taxes levied and collected for state purposes; the sum of $1,710, received as principal of the purchase-money on sales of school lands, and belonging to the permanent school fund, so called; the sum of $2,909.97, interest on unpaid purchase-money of school lands, and belonging to the general school fund, so called; the sum of $99.47, interest on unpaid purchase-money of university lands, and belonging to the general university fund, so called; and the sum of $210, received for special

liquor licenses, and belonging to the state inebriate asylum fund, so called.

The bond in suit bore date January 1, 1872, and was signed and sealed by all the defendants. It contained a penalty of $25,000, and the following condition : " The condition of this obligation is such that, whereas the above-bounden Henry Young was, at the late annual election, duly elected to the office of treasurer of the county of Sibley, now, therefore, if the said Henry Young shall safely keep and pay over, according to law, all moneys which come into his hands for state, county, township, school, road, bridge, poor, town, and all other purposes, then this obligation to be null, and otherwise of full force and effect."

In their answer the defendants pleaded (among other things) that the instrument in suit was signed and delivered by them on Sunday ; that it then contained no penal sum, and that the penalty was afterwards inserted, without their knowledge or consent, in the manner stated below. They also alleged that the defendant Young never gave the bond required of him by Gen. St. c. 38, before collecting any money, as principal or interest, on sales of school or university lands. The statutory provisions in regard to the bonds required of county treasurers will be found in the margin.[1]

---

[1] Gen. St. c. 8, § 126. "The county treasurer, before he enters upon the duties of his office, * * * shall give bond, with two or more sureties, freeholders, to be approved by the board of county commissioners, and in such sum as they direct, payable to the state of Minnesota, and conditioned for the safe-keeping and paying over, according to law, of all moneys which come into his hands for state, county, township, school, road, bridge, poor, town, and all other purposes, which bond shall be filed," etc.

Gen. St. c. 38 provides for the sale of school and other public lands. It creates the office of commissioner of the state land office, to be exercised, *ex officio*, by the state auditor. It provides (§ 7) that the terms of payment for such lands (other than timber lands) shall be "15 per cent. to be paid at the time of sale, and the balance of the purchase-money at any time thereafter, from time to time, within 20 years, at the option of the purchaser, with interest, annually in advance, at the rate of 7 per cent. per annum, on the unpaid balance, payable on the first day of June, or within six days thereafter, in each and every year."

A jury was waived, and the case submitted to the court, *L. M. Brown*, J., presiding, upon an agreed statement of facts, in substance as follows :

On December 31, 1871, the defendant Young, who was then treasurer of Sibley county, and who, at the election in the preceding November, had been chosen his own successor for the term of two years, to begin March 1, 1872, caused the instrument in suit to be prepared as and for his official bond for the said term, beginning March 1, 1872.   On the same day, which was Sunday, Young himself signed and sealed the instrument so prepared, and procured the other

Section 49 provides that the principal sum arising on all sales of school lands shall remain a perpetual school fund ; and section 50, that all moneys received as interest on such permanent fund shall constitute the current (or, as it is commonly called, the general) school fund, etc.

"Section 38.   The purchasers of any of the lands mentioned in this title * * * may pay to the treasurer of the county in which such lands lie, any amount which may be due, from time to time, on their several certificates, either for principal, interest, or penalty," etc.

"Section 39.   Before any county treasurer receives moneys, under the preceding section, he shall execute and give to the state a bond, with sufficient sureties, in an amount to be fixed by the commissioner of the state land office, * * * which bond shall be conditioned for the honest and faithful discharge of all trusts and responsibilities imposed by this chapter, and for the faithful payment of and accounting for all moneys received by him under the provisions of this title, to the state treasurer, or other person entitled to receive the same; the sureties to be approved by the judge of probate and register of deeds."

"Section 42.   The commissioner of the state land office shall transmit to each county treasurer to whom moneys may be paid under this title, a blank bond, with the penal sum fixed, as provided in the 39th section aforesaid, which the treasurer shall execute and procure to be approved, as hereinbefore provided, and return to the said commissioner," etc.

"Section 43.   On or before the first day of May, in every year, the commissioner shall cause to be made out, and transmit to such county treasurers as have filed their bonds with him, properly executed and approved, a statement showing the classes of land sold in that county, the number of the certificates of purchase, the name of the person to whom each certificate was issued, and the amount of both principal and interest due on each, on the first day of June, together with such directions, instructions, and blanks as shall enable the county treasurer to carry out the provisions of this title."

Laws 1868, *c.* 55, extends the provisions of Gen. St. *c.* 38, relating to school lands, to lands held by the state for university purposes.

defendants to sign and seal it, each of whom, after doing so, returned the instrument to Young. When thus signed and sealed, the instrument contained no sum whatever as the penalty thereof; but the defendants Welch, Cramer, and Wolf did not examine the instrument, and did not know when they signed it that it contained a blank in place of the penal sum, nor did they know in fact that it was to be presented to the board of commissioners of the county for approval and acceptance. These defendants did know, however, when they signed and sealed the instrument, that it was intended to be used by the defendant Young as his official bond, for his term beginning March 1, 1872, and they severally signed and sealed it as and for his official bond; and, at the time of such signing and sealing, they intended to be bound that Young, as treasurer, should perform its condition. At the time of such signing and sealing, the defendant Welch was one of the sureties of Young's official bond, in the penalty of $25,000, for his term of office as treasurer, expiring March 1, 1872.

The instrument thus returned to him by the sureties, Young, on the same day, delivered to the county auditor, that it might be presented by him to the board of county commissioners, for their approval and acceptance, at their then next session, in the first week in January, 1872. On January 4, 1872, the auditor presented it to the board of commissioners, then in session, who directed him to fill the blank for the penalty with the sum of $25,000, which he did in the presence of the commissioners. The board then referred the instrument, thus completed, to the county attorney for his approval, who examined it and reported it to be in proper form, whereupon the board, at the same session, accepted the instrument as the official bond of Young, for his term beginning March 1, 1872, and ordered it to be recorded, which was done.

None of the defendants were present at the session of the board on January 4th, nor did any of them, except Cramer,

ever do any act of ratification or adoption of the instrument, as his deed, after he had signed and sealed it. Cramer, however, acknowledged the instrument after its acceptance by the commissioners, and before it was recorded.

No one of the commissioners, at the time the instrument was accepted and approved by the board, knew that it had been signed on Sunday. One of them, however, did know that Young had been absent from Henderson (the county seat, and the place where the bond was signed by all the defendants) since the evening of Sunday, December 31st, and had not returned at the time of the approval by the board, but he did not communicate this knowledge to the board.

No one of the sureties ever authorized any one to insert a penal sum in the instrument, except in so far as such authority was implied in the signing of the same on said Sunday, as and for the official bond of said Young, and permitting said Young to take the same with him.

After the approval of the bond, the defendant Young took the proper oath of office, etc., and entered on his duties as county treasurer, and, between March 1, 1873, and October 10, 1873, received $3,274.22 from taxes levied for state purposes, and $210 collected for special liquor licenses, under Laws 1873, c. 10, no part of which was ever paid over by him to the state, or to his successor in office, though payment was duly demanded of him, by the state treasurer, at divers times between March 10, 1873, and December 23, 1873, on which last-named day he was removed from the office of county treasurer.

During the same period the defendant Young, being such county treasurer, collected and received, for principal and interest on sales of school and university lands, the sum of $4,662.07, being the property of the state of Minnesota, and belonging to the general and permanent school fund and general university fund, no part of which, though properly demanded, has he ever paid to the state or to his

successor in office. Prior to the collection of the moneys accruing upon sales of school and university lands, the defendant Young did not, as county treasurer or otherwise, execute any bond as required by Gen. St. c. 38, §§ 39, 42, 43, although he had been requested by the commissioner of the state land office to do so, and a blank bond had been furnished him for that purpose.

Upon these facts the court ordered judgment for the defendants, which was entered, and the plaintiff appealed.

*Geo. P. Wilson*, Attorney General, and *Geo. B. Young*, for the State.

*M. J. Severance* and *W. P. Clough*, for respondents.

MITCHELL, J.[1] Upon the agreed statement of facts in this case there are two questions of law to be passed upon : *First*, whether the instrument declared on ever was a valid bond? *Second*, if it was, did its obligation extend to those moneys received by Young on account of purchase-money of school and university lands?

The defendants urge that the instrument in question never had any force as against them; because : (1) When signed and sealed by them it did not express any penal sum, and this was afterwards inserted at the direction of the board of county commissioners, without authority; and (2) if executed at all, it was executed on Sunday.

In support of their first proposition, defendants insist that this instrument being a deed or instrument under seal, therefore authority to fill a blank therein with material matter could only be conferred by an instrument of equal solemnity—that is to say, one under seal.

Whatever may formerly have been the rule, or may still be the holding of some courts, upon this question, we think

---

[1] Gilfillan, C. J., and Cornell, J., having been of counsel, did not sit in this case. Hon. Samuel Lord, judge of the fifth district, and Hon. William Mitchell, judge of the third district, were assigned, by the governor, to sit with Berry, J., as judges of this court, *pro hac vice*, and the case was heard and determined by the court as thus constituted.

the better opinion, both on principle and authority, is that parol authority is adequate and sufficient to authorize an addition to, or alteration of, even a sealed instrument. At the present day, the distinction between sealed and unsealed instruments is arbitrary, meaningless, and unsustained by reason. The courts have, for nearly a century, been gradually doing away with the former distinctions between these two classes of instruments, and if they have not yet wholly disappeared, it simply proves the difficulty of disturbing a rule established by long usage, even after the reason for the rule has wholly ceased to exist. We therefore hold that parol authority is sufficient to authorize the filling of a blank in a sealed instrument, and that such authority may be given in any way by which it might be given in case of an unsealed instrument. *Drury* v. *Foster*, 2 Wall. 24; *Inhabitants of South Berwick* v. *Huntress*, 53 Me. 89; *Woolley* v. *Constant*, 4 John. 54; *Ex parte Kerwin*, 8 Cow. 118; *Wiley* v. *Moore*, 17 S. & R. 438; *Field* v. *Stagg*, 52 Mo. 534; *Vliet* v. *Camp*, 13 Wis. 198; *Smith* v. *Crooker*, 5 Mass. 538. Therefore, in our view, the only question is whether the facts, as stipulated in this case, establish parol authority from defendants to the board of county commissioners to insert a penal sum in the blank left in this instrument.

There is no claim that any express authority was given; but this is not necessary. Such authority may be implied from circumstances. It may be implied from the facts proved, when these facts, all taken together and fairly considered, justify the inference. In the case at bar, we think that all the circumstances, as they appeared to the board at the time they received the bond, established an apparent implied authority, from the sureties to the board, to fill the blank with such penal sum as they deemed sufficient and proper.

It is stipulated, as facts in the case, that the sureties "did know, when they signed and sealed the said instrument, that the same was intended by the said Young to be used

as the official bond of the said Young for his term, commencing March 1, 1872; and they severally signed and sealed the same as and for such his official bond; and, at the time of signing and sealing said instrument, the said sureties intended to be bound that said Young, as such treasurer, should perform the condition thereof.'' The instrument was fully completed, except the insertion of the penal sum. It is evident that the sureties neither stipulated nor expected that the instrument would be returned or afterwards exhibited to them, before its delivery for use. When the bond was presented to the board, they had a right to presume the existence of the facts thus stipulated. The board would also have a right to presume (certainly, in the absence of something affirmative to show the contrary) that the signers knew the contents of the bond when they executed it; also, that they knew the requirements of the law, to wit, that the instrument, to be a complete bond, must contain a penal sum, and that the amount thereof had to be fixed by the board. This was the apparent and presumptive state of facts, as they appeared to the board when the instrument was presented them for their official action.

Now what did these facts imply, and what had the board a right to presume that they implied? Why, clearly this: '' We (the sureties) have executed this instrument as the official bond of Young. We intend it to be used and delivered as such; but, inasmuch as we do not know at what amount you will fix the penal sum which the law requires you to fix, we have left this blank, which you can fill with such sum as you may determine.'' We think all the circumstances, fairly considered, imply all this almost as clearly as if expressed in words. The nature of the blank to be filled, also, was calculated to raise a presumption of implied authority to fill it. The condition of a bond is the essential feature of it. The penal sum is, in a certain sense, almost a matter of form. In this case, the sureties intended to execute a bond to secure the state from loss by

any default of Young. This was the whole substance of their agreement. No penal sum, however large, could extend this liability. The insertion, therefore, of a penal sum, operated simply to perfect the bond according to the original understanding of the signers, without injuriously affecting them, or in any manner changing the contract from what they intended it to be. It was in one sense, therefore, wholly immaterial to them what the penal sum should be. The nature of the blank itself was, therefore, a circumstance or fact that tended to show an implied authority to the board to fill it. Cases are to be found in the books where implied authority to fill blanks has been held to exist, without any evidence of assent on the part of the maker beyond the instrument itself. We think, therefore, that all these facts and circumstances clearly implied an authority to the board to insert a penal sum in this blank, which authorized them to act in the matter by so filling it.

It is urged by defendants that this authority could not be implied, because the sureties did not in fact know of the existence of the blank. It is undoubtedly true that in most, if not all, of the cases cited it does appear that the parties signing the instrument actually knew of the existence of the blank; and the knowledge of that fact, at the time an instrument is delivered for use, being a strong circumstance tending to establish an implied authority to the other party to fill the blank, it is undoubtedly true that the courts have, in such cases, put great stress upon this circumstance. But we find no case expressly holding that actual knowledge of the existence of the blank is indispensable, and without which authority can never be implied. The correct rule seems to be that this authority will be implied whenever it is fairly and legally inferrible from all the circumstances of the particular case under consideration. Moreover, in this case, as we have already said, the board had a right to presume that the sureties knew of the existence of this

blank, and, in view of this and all the other circumstances of the case, there was an apparent implied authority to the board, upon which they had a right to act, and, having thus acted, the sureties cannot now be heard to say that they did not know of the existence of the blank. In other words, they are now estopped from denying the existence of the apparent and presumptive state of facts which they, by their conduct, have authorized the board to believe and act upon; and now the apparent authority with which they clothed the board must be held to be the real authority.

As to when authority to fill blanks in written instruments will be implied from circumstances, see *Inhabitants of South Berwick* v. *Huntress*, 53 Me. 89; *Hunt* v. *Adams*, 6 Mass. 519.

It is further urged that the bond in question is void, because it was signed and sealed on Sunday.

It will be noticed that, although actually signed on Sunday, it bears date on Monday; that it was not delivered to nor accepted by the board until Thursday; that, when presented to and accepted by the board, they were not aware of the fact that it had been signed on Sunday. The mere statement of these facts is, we think, a sufficient answer to the point made by defendants. The objection is not well taken for two reasons: *First*. The sureties having, by their own act in dating the bond on Monday, represented to the board that it was in fact executed on that day, and they, in reliance upon that representation, having acted upon it, and accepted the bond, and allowed Young to enter upon the duties of his office, the sureties are now estopped from denying the truth of such representation, or showing that it was executed upon Sunday instead of the day it bears date. Bigelow on Estoppel, 480 *et seq.*; *Vinton* v. *Peck*, 14 Mich. 287. *Second*. It is almost an elementary principle, laid down in all the books, that a bond is not "executed" until it is delivered, for delivery is of the essence of a deed. It takes effect only from execution, on

delivery, and, until delivery, it is not a contract, and is of no further value than the paper upon which it is written. This bond not having been delivered until the following Thursday, the mere signing of it on Sunday does not affect its validity. In the proper and legal sense of the term, it was not "executed" on Sunday, but on Thursday. *Com. v. Kendig*, 2 Penn. St. 448; *Bloxsome* v. *Williams*, 3 B. & C. 232; *Lovejoy* v. *Whipple*, 18 Vt. 379; *Clough* v. *Davis*, 9 N. H. 500; *Hill* v. *Dunham*, 7 Gray, 543; *Pierce* v. *Richardson*, 37 N. H. 306. The fact that everything that was done by the sureties in reference to the bond was done on Sunday, does not affect the validity of the implied authority to the board to fill the blank. This authority was implied from a continuing state of facts, which still continued to exist on the day when the board filled the blank and accepted the bond. Therefore the original authority was renewed or continued on each succeeding secular day on which such state of facts was permitted by the sureties to continue to exist.

We are therefore of opinion that the instrument declared on in this case was a valid bond. But we are also of opinion that its obligation does not, as to the sureties, extend to moneys collected by the principal, Young, on account of purchase-money of school and university lands.

It was a general county treasurer's bond, given in accordance with the provisions of Gen. St. c. 8, § 126. While the condition of such a bond is, perhaps, broad enough in its terms to include proceeds of the sales of school and university lands that may be collected by a county treasurer, yet it must be read as relating only to those moneys which are treated of in the same connection—that is, moneys which a county treasurer is authorized to collect as county treasurer. This is all that the parties to the bond can be considered as having in view in executing it. It is all that the county board could take into account in fixing the amount of the bond, or in determining its sufficiency.

The management of school and university lands is, by Gen. St. c. 38, entrusted to a separate department of the state government, the head of which is called commissioner of the land office. , And although certain county officers, as, for example, county treasurers, are brought into connection with the land department, and, under certain circumstances, are required to perform certain duties, still such duties are entirely distinct from the ordinary duties of the offices which they hold. The office of county treasurer, and the office of collector of purchase-money of school and university lands, although filled by the same person, are in reality two distinct offices. Although the same person must perform the duties of both offices, he is required to give separate bonds. The duties in each case are entirely distinct. The conditions of the two bonds are different. For the special duties imposed upon a county treasurer by Gen. St. c. 38, only his sureties on the separate bond required by section 39 are answerable. This bond is in no sense merely cumulative, or intended as additional security. Therefore the sureties on the general bond of a county treasurer are not liable for his failure to pay over moneys collected by him on account of school and university lands, under the provisions of Gen. St. c. 38. *State* v. *Johnson*, 55 Mo. 80.

The judgment of the court below must, therefore, be reversed, and judgment entered in this court, in favor of the plaintiff against all the defendants, for that part of the money claimed by the state which was collected and received by Young, as county treasurer, from taxes levied for state purposes, and also that collected by him for special liquor licenses, under Laws 1873, c. 10, amounting in all to the sum of $3,484.22, with interest thereon from December 23, 1873, and a penalty of 10 per cent. thereon, together with costs of both courts.

Ordered accordingly.