BOARD OF COUNTY COMMISSIONERS OF SWIFT COUNTY v. THOMAS KNUDSON and Others.[1]

February 3, 1898.

Nos. 10,937—(284).

**County Treasurer—Misappropriation of Funds—Commingling of State and County Funds—Liability on Bond—Action by County.**

The board of county commissioners of Swift county brought this action against its county treasurer, and the sureties upon his bond, to enforce an alleged liability of the treasurer, as being a defaulter, in converting to his own use certain taxes and money received and collected by him as county treasurer during his term of office.  Part of the money so collected by him belonged to the county, and part thereof belonged to the state, collected by the treasurer on sale of public lands.  Before the commencement of this action the treasurer turned over to his successor in office a greater sum than the amount due the county, but it did not appear that the treasurer had commingled the state funds with the county funds so turned over to the treasurer's successor in office.  The trial court, upon the theory that both state and county funds had, by the treasurer, all been commingled together in a bank depositary, and that they belonged to the state and county, respectively, pro rata, directed a verdict for the county of $1,239.70 as its share of the funds.  *Held*, that such direction was error, as not justified by the evidence.

**Same.**

Also *held* that, if any portion of the fund so turned over by the treasurer to the county belonged to the state, the county holds it as trustee for the state, to which it must account.

Appeal by certain of the defendants from an order of the district court for Swift county, Powers, J., denying their motion for a new trial after a verdict for plaintiff for $1,239.70 by direction of the court.  Reversed.

[1] Reported in 74 N. W. 158.

*J. A. Green* and *Brooks & Hendrix*, for appellants.

*F. P. Olney*, for respondent.

BUCK, J.

The county commissioners of Swift county brought this action to enforce an alleged liability upon the bond of the county treasurer, Thomas Knudson, executed by him as principal, and the other defendants herein as sureties thereon.

Knudson was elected treasurer of Swift county at the general election held therein in 1892, for the term of two years. The bond which he gave, and upon which this action was brought, bears date January 4, 1893, and was approved January 11, the same year. In the complaint it is alleged that Knudson, as such treasurer, between the 2d day of January, 1893, and the 27th day of November, 1894, received various sums of money, amounting to about $1,339.58, in taxes levied in said county and from other sources, and collected and received by him as such treasurer during said term, and that he fraudulently during said term, in breach of his trust, converted and appropriated to his own use said money, and that he failed to pay over the same at the time and in the manner prescribed by law. Upon the 27th day of November, 1894, Knudson resigned his office as such treasurer, and one J. F. Uhl was duly appointed to fill the unexpired term, and on the 6th of November, 1894, Uhl was duly elected to said office for a term of two years.

The defendant's sureties admitted the execution of the bond; otherwise the allegations of the answer are substantially a general denial. Knudson did not answer. The trial was to a jury, and at the close of the testimony the defendants requested the court to instruct the jury to find a verdict for the defendants, which request was refused and duly excepted to. The court then charged the jury that,

"From the evidence introduced and the law as applied to that evidence, the court considers it its duty to direct you what verdict to find, and the court directs you to find a verdict in favor of the plaintiff, the board of county commissioners, for the sum of $1,239.70,"

which charge the defendants excepted to. The jury rendered a verdict as directed.

A county treasurer is required by statute to give two bonds to the state: One under G. S. 1894, § 723, which provides that the treasurer shall faithfully execute the duties of his office, and shall keep and pay over according to law all moneys which come into his hands for state, county, township, school, road, bridge, poor, town and all other purposes. The other bond is given under section 3997 of said statutes, which provides that the county treasurer, before receiving money on account of sale of school and public lands, must execute another or special bond for the honest and faithful discharge of his trust, and for the faithful payment and accounting to the state treasurer, or other person entitled to receive the same, for all moneys received by such county treasurer. And, under section 4001, all moneys so received by the county treasurer shall be held at all times subject to the order and direction of the state treasurer, for the benefit of the funds to which such moneys, respectively, belong; and during the months of March, June, and October of each year, and at such other times as he may be requested so to do by the state treasurer, he shall pay into the state treasury all moneys received on account of such funds since the last payment he may have made.

It is to be observed that the provisions of these bonds are different, and hence the obligations of the sureties are not the same. Nor is it intended that one set of sureties shall be bound for the defalcation of the funds provided for in the other bond. And while the board of county commissioners can bring suit upon the general bond of the treasurer given pursuant to said section 723, in case of a default in its conditions, it would not be a proper party to begin an action upon a bond given under section 3997.

The bond herein sued upon is the general bond given under said section 723. This court held in State v. Young, 23 Minn. 551, and Board v. Tower, 28 Minn. 45, 8 N. W. 907, that a county treasurer's general bond does not cover moneys coming into his hands on account of sales of school and university lands, and that the sureties on such general bond of a county treasurer are not liable for deficiencies or failure to pay over money collected on university or school lands, and that for such matters the sureties on his special bond are the ones liable. What right, then, has Swift county to

volunteer its services, and bring an action for the benefit of the state, without its request, against the sureties upon this general bond, when the state is authorized, as the proper party, to sue upon its special bond executed by a different set of sureties, and for an entirely different fund? Money received from the sale of public lands belongs to the state, not to the county. The board of county commissioners have no control over such fund, and cannot direct the treasurer to pay it to any particular person, officer or body, and hence such board has no right to demand its payment or sue for its recovery.

In the case of State v. Young, supra, this court, speaking through Justice Mitchell, said, at page 562:

"The management of school and university lands is, by G. S. c. 38, intrusted to a separate department of the state government, the head of which is called 'commissioner of the land office.' And although certain county officers, as, for example, county treasurers, are brought into connection with the land department, and, under certain circumstances, are required to perform certain duties, still such duties are entirely distinct from the ordinary duties of the offices which they hold.

"The office of county treasurer, and the office of collector of purchase money of school and university lands, although filled by the same person, are in reality two distinct offices. Although the same person must perform the duties of both offices, he is required to give separate bonds. The duties in each case are entirely distinct. The conditions of the two bonds are different. For the special duties imposed upon a county treasurer by G. S. c. 38, only his sureties on the separate bond required by section 39 are answerable. This bond is in no sense merely cumulative, or intended as additional security. Therefore the sureties on the general bond of a county treasurer are not liable for his failure to pay over moneys collected by him on account of school and university lands, under the provisions of G. S. c. 38. State v. Johnson, 55 Mo. 80."

If Knudson was a defaulter to the state upon its special bond given under said section 3997, the state had capacity to sue in its own name, but the action would be to enforce a liability against a different class of sureties, and for a deficiency of an entirely different fund, a fund which Knudson was bound to account for and to pay over to the state treasurer, not to his successor in office. Neither as a matter of law nor as a matter of practice would there be any necessity for the county of Swift to volunteer its services, and

bring an action to recover any deficiency arising under section 3997. Neither primarily nor secondarily were the sureties upon the bond in suit liable for Knudson's defalcation, if any, arising exclusively under said section 3997. If they were liable at all, it must have arisen by reason of some act of Knudson's other than the mere fact that he was a defaulter to the state by reason of his nonpayment and neglect to account to the state treasurer for school and university funds by him collected. We discover no such grounds in the evidence.

But it is contended that the evidence shows that Knudson was a defaulter to both county and state; that he intermingled the funds mentioned in each of the bonds; and hence the trial court had a right to apportion the loss or deficiency between the county and state, and direct the jury to find a verdict accordingly; following County v. Ring, 29 Minn. 398, 13 N. W. 181. The evidence shows that the total sum chargeable against Knudson, including funds collected by him as treasurer and funds collected by him as collector for the state, was $26,351, and of this sum there was due the state, on account of the sale of school lands, $2,508.98, leaving as the total sum due from him, as treasurer, to Swift county, $23,-842.03. To meet this sum chargeable against him, he turned over to his successor, as treasurer of Swift county, the following amount:

| | |
|---|---:|
| Certificate of deposit Bank of Benson | $ 4,784 71 |
| Certificate of deposit Swift County Bank | 4,785 71 |
| Open account Bank of Benson | 7,401 65 |
| Open account Swift County Bank | 7,895 26 |
| Cash | 100 00 |
| Town orders | 39 15 |
| | $25,006 48 |

—A sum exceeding the amount due Swift county by $1,164.45.

This sum was turned over to Swift county or its treasurer long before the commencement of this action against Knudson's sureties on the general bond. As Swift county had received from Knudson much more money than was due from him or chargeable against him in favor of the county, it has not been damaged by any act of Knudson, and it need not have concerned itself as to his liability to the state. Because Knudson had paid, or Swift county collected,

71 M.—30

more than was justly due it, raises no presumption that such excess was money collected by him on account of the sale of school, university or public lands. It was not Knudson's duty to pay any such money so collected to the county of Swift, nor the right of Swift county to demand or collect it of Knudson. Such money is not collected by him strictly as county treasurer, but as collector for the state; and to it, or its state treasurer, are he and his sureties, under section 3997, accountable.

It does not appear that the state or the state treasurer has ordered and directed or requested Knudson to pay over any money so collected by him; neither is the state a party to this action, and hence it would not be bound by any adjudication made herein. Its right of action, if any, would be against a different class of sureties, upon a different bond, and for a different cause of action. It is true that it does appear that Knudson is indebted to the state for money in the sum of $2,508.98 collected by him on the sale of school lands, but where this money is, or what has been done with it, does not satisfactorily appear. If Knudson was under no obligation to pay the deficiency or the amount due the state to Swift county, or to account to it for such money, then neither he nor his sureties were bound, on the trial of this action, to show where the money was or what had become of it. If he had intermingled money collected for the state with the funds collected as county treasurer, for which the bond was given under section 723, the burden was on Swift county to show this fact. This it failed to do.

The law, in providing for the designation of depositaries for county or public funds, where such funds must be deposited by the county treasurer as such, does not specify such depositary for money received by him, as collector thereof for the state, from the sale of public lands. This action is brought against Knudson's sureties upon the specific ground that he was a defaulter in the sum of $1,339.58 which he had collected and received as treasurer, and converted to his own use, not upon the ground that there was money in Knudson's hands, officially deposited in the banks, in excess of the amount properly called for by the auditor's and treasurer's books and accounts, and which ought to be turned over to the county revenue fund, under G. S. 1894, § 735.

Neither is there any presumption of law that public funds collected by the county treasurer, on sale of public lands, can or should be found in the county depositary, when the law does not require them to be there deposited.   Certainly a county treasurer, as such, cannot be charged with being a defaulter merely because money which he had collected for the state was or was not deposited to his credit in a county depositary bank.   The state does not look to any depositary for money collected for it by the county treasurer, but to the treasurer, as its collector, and his sureties upon the bond given pursuant to section 3997.   Its power to enforce a liability arising in case of a defalcation in this respect is ample, and, as the plaintiff failed to show that any public funds so collected by Knudson for the state had been mingled with the county funds, the order denying the defendants' motion for a new trial should be reversed.

So ordered.

MITCHELL, J.

I concur in the result.   Neither party claims that the county is entitled to recover for moneys due from Knudson on account of the sale of school and public lands, nor did the trial court proceed upon any such theory.   In directing a verdict for the plaintiff, the court proceeded upon the theory that both state and county funds had been all commingled together in these bank deposits, and therefore that they belonged to the state and county, respectively, pro rata,—that is, in the proportion which the amount due the state ($2,508.98) bore to the amount due the county ($23,842.03),—and that the county was entitled to a verdict for the balance due it, after crediting Knudson with the proportion of the commingled fund which belonged to the county.

The court would have been right in adopting the theory, if the evidence had justified it.   But, to justify the court in directing a verdict, it should have been conclusively proved that all moneys, both state and county, had been intermingled in these bank deposits, or that the money of each had been so intermingled in the same proportion which the amounts now due them, respectively, bear to each other, and that this commingled fund had been drawn on pro rata for state and county purposes, or that there was no available

or obtainable evidence on that question; in which case the presumption would, of necessity, have to prevail that it had been drawn on pro rata for such purposes. The evidence bearing on these facts was not conclusive, and as to some of them entirely lacking.

The fact that Knudson turned over to his successor in office more than the county's share of this commingled fund does not stand in the way of the county recovering in this suit what is due it after crediting so much of the commingled fund as properly belonged to it. Whatever was turned over to Knudson's successor in office more than that, the county holds in trust for the state, to which it must account. For this reason there should be a reversal and a new trial.

START, C. J., and CANTY and COLLINS, JJ.
We agree with MITCHELL, J.