## GEORGE KNAPP & COMPANY *v*. WILKS.

### Opinion delivered November 11, 1912.

1. GUARANTY—EFFECT OF ALTERING CONTRACT.—Insertion of the place and date of execution in a contract of guaranty after it was signed by the guarantors was not such a material alteration as would discharge them. (Page 245.)

2. SAME—AUTHORITY TO FILL UP BLANKS.—If the guarantors in an instrument intrust it to the principal for use with blanks not filled, such instrument so delivered carries on its face an implied authority to fill up the blanks necessary to perfect same, and the principal must be deemed the agent of the guarantors for that purpose. (Page 246.)

3. SAME—EFFECT OF PRINCIPAL'S FRAUD.—Guarantors upon an instrument are not relieved by false representations of the principal made to induce them to sign the instrument if the obligee therein was not a party to such fraud. (Page 247.)

Appeal from Benton Circuit Court; *J. S. Maples*, Judge; reversed.

### STATEMENT BY THE COURT.

One Walter R. Isbell entered into a written contract with appellant, dated Fort Smith, Ark., April 30, 1910, whereby he agreed to buy one hundred copies per day of the St. Louis Republic at a certain price named in the contract. The papers were to be delivered in St. Louis, Mo. To guaranty the performance of the contract, the appellees executed to appellant the following instrument:

"We, the undersigned, hereby become sureties, individually and collectively, for W. R. Isbell, and hold ourselves responsible to you for the prompt payment by him for all copies of the St. Louis Republic furnished him by you. We

further guaranty that such payment shall be made at your office in St. Louis, Mo., and that whenever there shall be default in such payment we guaranty to pay the amount due on demand."

Appellant sued appellees on account for papers furnished Isbell, and for which he had not paid, amounting to the sum of $178.17. The appellees answered, setting up the following: First, fraud in securing the execution of the contract sued on; second, that the contract sued on had been materially altered in this, that the words "Fort Smith, Arkansas, April 30, 1910," and the words "one hundred" had been inserted in contract with Isbell after the contract of guaranty was signed by appellees, and the contract of guaranty was therefore void; third, that the agreed place of performance was at Bentonville, when the contract designated Fort Smith."

The testimony of the appellees tended to show that at the time they executed the contract of guaranty the words "Fort Smith, Arkansas, April 30, 1910," and the words "one hundred" were not in the contract; that the places where these words now occur were blank spaces. The appellees lived at Bentonville, Arkansas. Isbell had been selling papers there. He brought the contract of guaranty to appellees, and told them that he was going to continue to sell papers in Bentonville, and upon that representation appellees executed the contract. They would not have executed the contract, as they stated, if they had known that Isbell was going to sell the papers at Fort Smith, instead of at Bentonville. He was a one-legged boy, and they were willing to sign the bond, thinking that he was going to continue the sale of papers in Bentonville. They never had any correspondence with the appellant before signing the guaranty.

The court refused to direct a verdict in favor of the plaintiff for the amount in suit, and the jury returned a verdict in favor of appellees, and from this judgment in their favor this appeal is duly prosecuted.

*Dick Rice,* for appellant.

1. A writing is not avoided by an immaterial alteration therein. 21 Pac. 479; 47 S. W. 409; 35 N. E. 999; 35 N. E. 1120; 10 Am. Rep. 161; 33 Mich. 505; 2 Am. & Eng. Enc. of L.

(2 ed.), 222; *Id.* 225; 54 Wis. 425; 11 N. W. 795; 5 Mass. 538; 97 N. E. 130.   An alteration is immaterial where neither the rights, duties, interest nor obligations of the parties are affected or changed.   5 Mass. 538; 97 N. E. 130.

2.   The burden of establishing an alteration is upon the party alleging it, if the instrument is fair on its face.   6 S. W. 460; 33 Pac. 470; 5 N. E. 338; 12 N. E. 315; 4 N. W. 193. See also 49 S. W. 285; 60 Pac. 270; 113 S. W. 251; 98 S. W. 229.

3.   Appellees are estopped from setting up the defense of alteration.   When they signed the instrument with blanks in it, they by implication conferred authority on appellant to complete the instrument with reasonable terms.   2 Cyc. 159; 24 Ark. 511; 27 Ark..108; 53 Me. 89, 87 Am. Dec. 539. See also 9 Wall. (U. S.) 544; 35 Ark. 146; 122 S. W. 756; 76 S. W. 1064.

4.   If there was fraud on the part of Isbell towards appellees in this transaction, that would not relieve them as against appellants, unless the latter participated in the fraud.   66 N. Y. 326; 28 N. E. 402; 41 N. E. 130; 20 Cyc. 1419; 16 N. E. 196; 31 N. Y. 294.

No brief filed for appellees.

WOOD, J., (after stating the facts).   Conceding that the blank spaces in the contract were filled in by inserting in the blank for the date the words "Fort Smith, Arkansas, April 30, 1910," and in the blank space left for the number of copies of the paper the words "one hundred," and that these insertions were made by Isbell after the contract of guaranty was executed by the appellees, still we are of the opinion that these were immaterial alterations that did not affect the liability of appellees under their contract of guaranty.

Under the undisputed evidence, the only object of inserting the date in the contract between Isbell and the appellant was to fix a time when the liability of Isbell and the appellees for the papers furnished should begin.   The contract between Isbell and appellant contained this provision:   "This contract will be in effect when duly approved."

It was immaterial, under the provisions of the contract, what date the contract bore; for the liability of the appellees would   commence,   under   the   provision   above   quoted,

from the time of its approval. The contract, under its terms, took effect from that date. The contract between Isbell and appellant does not show on its face the date when it was approved, nor is there any evidence *aliunde* as to when it was approved, but the approval of course could not have been before the contract was executed, and in the absence of proof it must be assumed that the contract was approved on the day of its execution.

The contract of guaranty was dated April 22, 1910, eight days prior to the date of the contract between Isbell and appellant. Therefore, the liability of appellees is not increased by the insertion of the date in the contract between Isbell and appellant subsequent to the date of the contract of guaranty upon which they are sued. The appellees, under their contract of guaranty, became responsible to the appellant "for the prompt payment by him for all copies of the St. Louis Republic furnished him."

So far as the contract is concerned, the number of papers was not specified, and there is no evidence to show that the number was agreed upon. On the contrary, a blank space was left in the contract between Isbell and appellant to be filled in, according to the undisputed evidence. Therefore, the filling in of the number of copies of the paper to be furnished Isbell by appellant was not an alteration which appellant was not authorized to make. "If a party to an instrument intrusts it to another for use with blanks not filled, such instrument so delivered carried on its face an implied authority to fill up the blanks necessary to perfect the same, and the person to whom the instrument is so intrusted must be deemed the agent of the party who committed the instrument to his custody." 12 Cyc. 59. See *White-Wilson-Drew Co.* v. *Egelhoff*, 96 Ark. 105.

Here the appellees executed the bond in suit, agreeing to be liable to appellant for all the papers it furnished Isbell, and this bond was delivered to the obligee. This was authority for the appellant to insert the number of papers furnished in the contract between it and Isbell. See *Inhabitants of South Berwick* v. *Huntress*, 53 Me. 89, 87 Am. Dec. 539.

The uncontradicted evidence showed that appellees knew when they executed the bond in suit that there were blanks

in the contract between Isbell and appellant to be filled by the appellant. The filling in of these blanks therefore did not relieve the appellees of liability on their contract.

If Isbell, by making false representations to appellees, perpetrated a fraud upon them which induced them to sign the instrument in suit, the appellant was in no manner responsible for that fraud, for there is nothing to show that appellant at the time it entered into the contract with Isbell to furnish the papers had knowledge of the facts which appellees claim constituted a fraud upon them. Appellant was innocent in the transaction, and it approved the contract of guaranty in suit and acted upon it in good faith. The appellees, by signing the instrument of guaranty, enabled Isbell to procure the papers from appellant under his contract. The appellees therefore are not in a position to defeat appellant's claim by a charge of fraud. They are estopped from setting up any charge as against the claim of appellant.

"It is no defense to an action upon a bond that the sureties were ignorant as to the extent of the obligation assumed or were misled by the principal in reference thereto, in the absence of proof that the obligee was a party to the fraud." *Western N. Y. Life Ins. Co.* v. *Clinton*, 66 N. Y. 326; *Powers* v. *Clarke*, 28 N. E. 402; 20 Cyc. 1419; *Bascom* v. *Smith*, 41 N. E. 130; *Lucas* v. *Owens*, 16 N. E. 196; *McWilliams* v. *Mason*, 31 N. Y. 294, cited in appellant's brief.

The court should have directed a verdict in favor of the appellant. For the error in refusing to do so, the judgment is reversed, and judgment will be entered here in favor of appellant for $178.17, the amount of its claim, with interest at 6 per cent. per annum from April 25, 1911, the date of the filing of suit.