CHIEF JUSTICE WILLIAMS
delivered the opinion op the court.
Prather having sued out execution on a replevin bond of Wm. and C. S. Harper as principals and appellees as securities, and having it levied on the property of said decedent Thompson, the securities filed a petition, and obtained an injunction from further proceedings for the alleged causes that said bond was not executed before and attested by an officer, but signed by them on a Sunday at the instance and request of C. S. Harper, who then had the paper, and afterward delivered it to Robinson, the officer who had the execution; also because Prather had permitted more than a year to elapse after the issual of one execution before he took out another.
The execution issued on the judgment against the Harpers. September 6, 1860, which was returned indorsed “Replevied October 10, 1860, as per bond inclosed. J. M. Robinson, D. S., for Wm. Cromwell, S. H. C.”
*187 The replevin, bond returned with this execution bears the same date of the return, and is the one in controversy, but it has no attestation of the officer to it.
The evidence in the case shows that it was_ signed in blank at church on Sunday by appellees, and delivered to C. S. Harper, who afterward delivered it to the deputy sheriff, but not on Sunday.
As this made C. S. Harper the agent of the appellees to deliver the bond, and he delivered it not on. Sunday to the officer, but, as must be presumed, on the day it bears date, and as it did not become obligatory until delivered to the officer, it can not be regarded, so far as appellant’s rights are concerned, as executed on Sunday. Nor does the want of attestation by the officer, nor other mere faultiness because of omission of some duty by the officer, vitiate it as a statutory bond, as was decided by this court, in Hopkins v. Chambers, 7 Mon. 261, which said: ‘‘ Whether, when taken by a sheriff, a bond has the force of a judgment has never been supposed to depend upon critical exactness. Though inaccuracies of the most palpable sort be committed by the officer, and the bond be taken for too much or too little, its force and efficacy as a statutory replevin bond has nevertheless always been understood to be the same as if no error existed in the bond. It is to replevy bonds, that the law communicates the force of judgments, and it must be to the bond, and not the conduct of the officer in taking it, that we should have recourse in ascertaining its efficacy.” And, as decided in said cause, if the bond he merely faulty, it may be quashed upon proper notice made in proper time.
But after abiding by and recognizing the efficacy of said bond on March 7, 1861, and then taking no steps to quash it, nor raising any objection 'by legal proceedings, until the filing of this petition, September 4, 1865, it is *188 not only too late now to raise them, but such objections must be deemed as waived, even had they been available if properly made.
March 6, 1861, Prather’s execution, which had been issued on said replevin bond February 25th preceding, was levied on a negro man and five mules, the property of the principal, William Harper.
On the next day, at the “request” of Harlan and Thompson, and on their executing a writing “to remain bound for said debt in as full and complete manner as if the same had not been stayed in any way, hereby consenting that the collection of said debt shall be delayed so long as said Prather may desire,” Prather ordered the return of said execution, which the officer accordingly did, indorsing thereon, “This execution is ordered to be returned by plaintiif.”
Matters thus remained until July 12, 1865, when this execution now enjoined was sued out and levied on Thompson’s farm, twelve days thereafter.
In the.mean time the late war had become flagrant; that country much disorganized; the civil courts suspended; the country controlled much of the time by martial law, administered by the military authorities of the United States; until the spring of 1862 possessed and controlled by the military of the “.Confederate States;” and nearly all the time overrun by the military of the one side or the other. These appellees in the mean time had never complained of Prather’s delay, and had given him no notice to proceed to collect the debt.
This case is very different from the case of McCauley v. Offut, 12 B. Mon. 386, in its facts, reasons, and motive of delay. The execution in that case was stayed at the instance of the principal and before levy, and on the consent thereto by the securities. Here the execution was *189 levied on tlie principal’s property, and its return ordered at the request of the securities, who bound themselves in writing to remain bound so long as Prather may desire to delay it, which evidently means so long as he should consent thereto; for the delay was not of his seeking, but by his consent, and that at the securities’ instance and request, as evidenced by the writing. The collection of the debt in McCauley v. Offut was delayed near twelve years without any further consent obtained from the securities, and without any delaying cause shown, when they had only agreed that the execution then in the sheriff’s hands may be stayed for any period of time the said McCauley may direct; and, as properly held by this court, was manifest that the securities only contemplated a stay of that execution so long as it permitted, and not that they should be bound for an indefinite postponement of the collection of the debt. But here the securities sought a return of the execution, and agreed to be bound on said bond, and consenting that the collection of the debt shcdl be delayed so long as Prather may desire” — manifestly meaning that they would be bound for any indefinite postponement of the collection of the debt to which Prather might consent, and this too when the execution was levied on the principal’s property, and the debt would then doubtless have been made out of his property but for their interposition. Besides, here the disturbing and hindering causes prevented the collection for much the larger, indeed nearly all, the time of the delay.
This case is more similar in its features to the case of Furber v. Bassett, 2 Duvall, 433, and must be governed by the principles announced therein. Appellees having by their own conduct produced the delay, and that too when the principal’s property was levied on, and having agreed in consideration thereof to be bound on the bond *190 for any indefinite postponement of collection, can not now be heard to object to its collection even from themselves, the principals in the mean time having become insolvent: nenee their injunction should have been dissolved, and their petition dismissed absolutely.
Wherefore the judgment is reversed, with directions to dissolve the injunction and dismiss appellees’ petition absolutely.