No. 9573.

CITY OF EVANSVILLE *v.* MORRIS ET AL.

SUNDAY.—*Contract.—Official Bond.—Principal and Surety.—Case Overruled.*— An official bond signed by the surety on Sunday and handed to the principal, who afterwards delivers it to the proper officer on a secular day, who receives and approves it, binds the surety. *Davis* v. *Barger*, 57 Ind. 54, and cases following it, overruled.

From the Vanderburgh Circuit Court.

*C. Denby* and *D. B. Kumler*, for appellant.

*P. Maier* and *J. M. Shackelford*, for appellees.

BEST, C.—This action was brought by the appellant upon the official bond executed to it by William G. Whittlesey, as secretary of the water-works of the city, and by David Elkins and Frank Morris as his sureties. The condition of the bond was that Whittlesey should pay over to the city all sums of money that should come into his hands as such secretary, and the breach assigned was that after its execution, and after he had entered upon the discharge of his duties, he received, as such secretary, the sum of $723.04 from various persons, and, although said sum had been demanded of him and his sureties, and although it was due and unpaid, he and they failed and refused to pay it.

Whittlesey made default, and the other appellees answered separately. Each answer contained two paragraphs. The first paragraph of each was precisely alike. The answer of Frank Morris was as follows: "Frank Morris, for his separate answer, says that he admits signing the bond in the complaint mentioned, but says he did not sign said bond on the 15th day of April, 1878, the day it bears date, but that he signed the same and delivered it to his co-defendant Whittlesey on the 14th day of April, 1878, which was the first day of the week, commonly called Sunday, and not any other or different day, and that such signing and delivering were the only acts done by him at the time of the execution of said bond." A demurrer for the want of facts was overruled to each of these paragraphs, and an exception reserved.

A reply in two paragraphs was filed to the first paragraph of each answer. The first paragraph of the reply was, in substance, as follows: The plaintiff avers that there existed in the city of Evansville, on the 1st day of April, 1878, what was known as the City Water-Works, by which the city and its citizens were supplied with water; that the water-works were under the management of the common council, a secretary and superintendent of the water-works; that among the duties of the secretary were the collection of water rents and revenues, and the payment of them to the city treasurer; that

the secretary received a salary, and before entering upon his duties was required to give his bond to the city, with sureties, in the sum of $5,000, which it was the duty of the mayor or common council to approve; that, on the 8th day of April, 1878, Whittlesey was appointed secretary of the water-works by the common council of said city, as his sureties well knew; that he was required to give bond, as his sureties well knew, and that the bond was necessary in order to enable Whittlesey to get control of the office to which he had been appointed, as his sureties knew; that they knew it was necessary to have the bond approved by the mayor or common council, and knew the bond was dated Monday, the 15th day of April, 1878, the day it bore date; that they knew the mayor or common council would not approve the bond if executed or dated on Sunday; that they knew that Whittlesey, on some subsequent secular day, would deliver the bond to the mayor or common council, who would approve the same on presentation, because the mayor and city clerk knew the signatures of the sureties, and that they were men of wealth, worth $15,000 each; that the sureties, knowing all these facts, and for the purpose of enabling Whittlesey to take possession of the office to which he had been appointed, signed the bond on Sunday and gave it to Whittlesey, who, on the day following, Monday, the 15th day of April, 1878, the day of the date of the bond, delivered the same to the mayor, who, being acquainted with the signatures and financial ability of the sureties, approved the same; that Whittlesey immediately entered upon the discharge of his duties as secretary of the water-works, and was thereby enabled to embezzle the money of the city; that plaintiff had no knowledge that the bond was executed on Sunday until a few days before the bringing of this suit; that by reason of the sureties signing said bond and putting it into the hands of Whittlesey, and by reason of the representations contained in the bond, the plaintiff believed it to be a good and sufficient bond, acted upon it with that belief, and permitted Whittlesey to assume control of the office and to re-

main in possession thereof; that the plaintiff relied upon the bond, and would have refused to permit Whittlesey to exercise control of the office had it known the foregoing facts, and had it not been that such facts were concealed from the plaintiff.

A demurrer, for the want of facts, was sustained to each paragraph of the reply, and, the appellant declining to further plead, final judgment was rendered for the appellees.

The errors assigned are that the court erred in overruling the demurrer to the first paragraph of each answer, and in sustaining the demurrer to each paragraph of the reply.

The question raised by the first assignment is whether a bond dated on Monday, but which was signed by a surety on Sunday, and on that day delivered by him to the principal therein, who afterwards, on a secular day, delivers it to the obligee who accepts it without notice of such facts, binds the surety. The delivery of the bond to the principal after the surety has placed his name upon it as a rule authorizes the principal to deliver it to the obligee, for such is the channel through which the paper would properly pass in reaching the obligee. *Deardorff* v. *Foresman*, 24 Ind. 481.

If the delivery by the surety had been made on a secular day, no question could arise as to the authority of the principal to make the delivery to the obligee, but it was made on Sunday, and it is claimed that this fact vitiated the authority thus conferred, though the bond was not accepted until a secular day. This position is based upon the ground that the act of the surety is in violation of our statute prohibiting persons from engaging in common labor on the Sabbath day. 2 R. S. 1876, page 483. It is well settled that an instrument executed on the Sabbath day can not be enforced as a general rule. *Pate* v. *Wright*, 30 Ind. 476; *Perkins* v. *Jones*, 26 Ind. 499.

The bond in question, however, was not executed on the Sabbath day, as it was not accepted by the obligee until a secular day. This leads us to enquire whether the statute embraces the case. The ground upon which courts have re-

fused to maintain actions on contracts made on the Sabbath day is the elementary principle that one who has participated in a violation of the law can not assert any right growing out of such illegal transaction. *Cranson* v. *Goss,* 107 Mass. 439 (9 Am. R. 45). It is said in this case that "It is upon this principle, that a bond, promissory note or other executory contract, made and delivered upon the Lord's day, is incapable of being enforced, or, as is sometimes said, absolutely void, as between the parties. *Pattee* v. *Greely,* 13 Met. 284. *Merriam* v. *Stearns,* 10 Cush. 257. *Day* v. *McAllister,* 15 Gray, 433. *Towle* v. *Larrabee,* 26 Maine, 464. *Pope* v. *Linn,* 50 Maine, 83. *Allen* v. *Deming,* 14 N. H. 133. *Finn* v. *Donahue,* 35 Conn. 216."

The rule is thus stated in *Johns* v. *Bailey,* 45 Iowa, 241: "The ground of the principle upon which such a contract is pronounced invalid is the violation of the law by the parties thereto. It is *causa turpis*. The parties to the contract are *participes criminis*, and are *in pari delicto;* neither can enforce the contract, for both are violators of the law."

Again, in *Tuckerman* v. *Hinkley,* 9 Allen, 452, it is said: "The ground on which a plaintiff's action is defeated in such case is, that a party is not permitted to found a claim in courts of law upon his own contravention of law."

In *Sargeant* v. *Butts,* 21 Vt. 99, it is said that "In order to render a contract void, for the reason that it was closed on Sunday, it must appear, that the party seeking to enforce it had some voluntary agency in consummating the contract on that day."

In *Dohoney* v. *Dohoney,* 7 Bush (Ky.) 217, where a surety had signed a note on Sunday and delivered it to his principal, who afterward delivered it to the payee, the court said that there was no evidence that the note was delivered on the Sabbath day, or that the payee " participated in any violation of the statute prohibiting labor and business, * on the Sabbath day ; and, according to the case of *Ray* v. *Catlett,* 12 B. Monroe,

VOL. 87 —18

532, and other decisions under our own and similar statutes of other States on the subject, the illegal acts of the obligors in the note did not affect its validity in the hands of the obligee, who did not himself violate the law."

In *Tuckerman* v. *Hinkley, supra,* the defendant had written a letter on Sunday, to the plaintiffs, requesting them to store and sell some iron for him. This request was not accepted or acted upon till Monday or Tuesday. In a suit upon the contract, it was held that, as the plaintiffs did nothing in contravention of the statute, the defendant's own wrong would not exonerate him from his obligation.

. In *Dickinson* v. *Richmond,* 97 Mass. 45, a request for services was made on the Sabbath day. The request was accepted and the services rendered on a week day; and in a suit upon the contract it was held that the defendant's own wrong in making the request on the Sabbath day did not taint the contract with illegality.

These cases abundantly show that a party to a contract, who has not himself violated the law, is not precluded from enforcing such contract, and that the acceptance of a bond on a secular day, which was signed on the Sabbath, is not a violation of the law. It is also well settled that if some steps are taken toward the execution of a contract on the Sabbath day, but it is not fully consummated until a secular day, such contract is not in contravention of the statute. *Beitenman's Appeal,* 55 Pa. St. 183; *Merrill* v. *Downs,* 41 N. H. 72; *State* v. *Young,* 23 Minn. 551; *Prather* v. *Harlan,* 6 Bush (Ky.) 185; *Commonwealth* v. *Kendig,* 2 Pa. St. 448. These cases conclusively show that to bring the case within the inhibition of the statute it must be shown that the contract was executed upon the Sabbath day.

This bond was not delivered upon the Sabbath day, and, as it was not executed until it was delivered, it follows that it was not executed upon the Sabbath day.

In *Beitenman's Appeal,* 55 Pa. St. 183, it is said: "'A bond is not perfected until delivery; hence a mere signing on Sun-

day does not render it void ; if not delivered till the day following.' The same principle exactly is to be found in *Sherman* v. *Roberts*, 1 Grant, 261. The contract must, therefore, be complete on Sunday to avoid it, and this is the rule in *Fox* v. *Mensch*, 3 W. & S. 446 ; and in *Lyon* v. *Strong*, 6 Verm. 219 ; and *Lovejoy* v. *Whipple*, 18 *Id.* 379."

In *Adams* v. *Gay*, 19 Vt. 358, the court said : " Contracts of this kind are not void because they have grown out of a transaction upon Sunday. This is not sufficient to avoid them ; they must be finally closed upon that day."

In *Lovejoy* v. *Whipple*, 18 Vt. 379, it is said : " In order to avoid this contract, on the ground taken below, was it necessary that the note should have been *delivered,* as well as written and signed, upon Sunday ? "

The general principles announced in the foregoing cases show that to bring this case within the inhibition of the statute it must appear that the bond was executed upon the Sabbath day, and this precise point has several times been decided in suits upon bonds executed by sureties in a similar way.

In *Prather* v. *Harlan*, 6 Bush, 185, sureties signed their names to a bond on the Sabbath day and delivered it to their principal, who afterward delivered it to the obligee on a secular day. In a suit upon the bond the sureties insisted that it was, for such reason, void, but the court held otherwise, saying that as the bond did not become obligatory until delivered to the officer, it can not be regarded, so far as the obligee's rights are concerned, as executed on Sunday.

In *Commonwealth* v. *Kendig*, 2 Pa. St. 448, a surety signed an official bond on Sunday and delivered it to his principal, who thereafter, on a secular day, delivered it to the obligee ; and in a suit upon the bond the court held that the surety was bound, saying that although the act of signing the bond on Sunday exposed the surety to the penalty imposed by the statute, yet it did not avoid the bond, "for the statute can not destroy that which had no existence."

In *State* v. *Young*, 23 Minn. 551, sureties had signed a

county treasurer's bond on the Sabbath day and had delivered it to their principal, who delivered it to the obligee on the next Thursday, and in a suit upon such bond the sureties insisted it was void, because signed by them on Sunday. The court, however, held otherwise, saying that the bond was not executed until Thursday, and "the mere signing of it on Sunday does not affect its validity."

In *Hall* v. *Parker*, 37 Mich. 590 (26 Am. R. 540), a bond was executed for costs. This bond was signed by the sureties on Sunday, delivered to the principal, and by him delivered to the court during the following week. In a suit upon this bond the sureties insisted that it did not bind them because signed on Sunday; the court held otherwise, saying that the bond took effect on a secular day, and "the circumstance that the act of signing occurred on Sunday could not be allowed to invalidate the instrument."

The same was decided in *Hilton* v. *Houghton*, 35 Maine, 143, in a suit upon a promissory note executed by sureties in the same way. In all of these cases nothing was done by the sureties but to sign their names and deliver the several instruments to their respective principals, and the cases are, therefore, as we think, precisely in point.

These cases clearly show that a surety who authorizes his principal, on Sunday, to deliver an instrument signed by the surety on that day is bound by such delivery. The reason is obvious. The authority to make the delivery, but for the statute, is ample and complete. The statute does not affect it, for the reason that it alone prohibits the enforcement of contracts executed on the Sabbath day. If otherwise, it would punish a party who has done no wrong, and would exonerate a party from a civil obligation simply because he had himself violated the law. It would thus shield the guilty and punish the innocent. This it will not do, and hence the authority to make the delivery is unaffected by the statute.

There is another and an equally cogent reason why the facts stated constitute no defence. The only thing they legally

tend to show is the non-delivery of the bond. This simply questioned its execution. The execution of the bond, however, was admitted, because it was not denied by a pleading under oath. If the answer had alleged that the bond was not signed by the appellees, or was not delivered by them personally, or by any person authorized to make the delivery, no one would pretend that such answer, in the absence of a verification, would be worth anything. Yet this answer alleges nothing more. It is true that it does not, in terms, allege that the person who made the delivery had no athority to make it, but the fact from which such conclusion is drawn, viz., that the authority was given on Sunday, is averred, and this amounts to no more than an averment that the bond was delivered without authority. The admission remains that the bond was executed, and the facts averred only show that some steps were taken on Sunday toward the execution of a bond that was afterwards duly executed upon a secular day. That this is not sufficient to invalidate the bond is well settled by a long and almost unbroken line of decisions in all the States where statutes similar to ours have been enacted. This answer, therefore, presents no question as to the execution of the bond, and hence no question arises as to its delivery, or as to the authority of the person by whom the delivery was made. All defences of this nature are based upon the admission that the instrument has been duly executed. If not executed, it is wholly immaterial whether the appellees signed their names on Sunday, or on any other day, as such instrument will not bind them, whenever signed. The enquiry as to when the bond was signed only becomes material upon the the admission that it was executed at some time. At what time is the question. If at any time other than on Sunday the statute does not render it void. It is not averred that this bond was executed on Sunday, and, therefore, the facts averred constitute no defence to the action.

We are aware that the case of *Davis* v. *Barger*, 57 Ind. 54, decides this question the other way, and that some other cases

follow it; but we think the conclusion thus reached wrong, and that the case should not be followed. As the answers in question, for the reasons given, were insufficient, the demurrers should have been sustained; and for the error in overruling them the judgment should be reversed. The reply was good.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment be and it is hereby in all things reversed, at the appellees' costs, with instructions to sustain the demurrers to the first paragraph of each of the appellees' answers.

NIBLACK, J., did not participate in the decision of this cause.

Petition for a rehearing overruled.